RICHARD SUSLA v. STATE AND OTHERS.

247 N. W. 2d 907.

November 26, 1976—No. 46220.

*Hvass, Weisman & King* and *Reed K. Mackenzie,* for appellant.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Assistant Solicitor General, *Edward M. Laine* and *Kent Harbison,* Special Assistant Attorneys General, for respondents.

Heard and considered by the court en banc.

SHERAN, CHIEF JUSTICE.

This case presents anew the issue of the extent of the sovereign immunity of the State of Minnesota. It arose under case law which has since been reversed and under statutes which have since been repealed. However, it appears to present a fact situation which could well recur but for which no provision has been made in the new statutes. For this reason, the resolution of the issue presented is very difficult.

At the time of the incident giving rise to this lawsuit, plaintiff, Richard Susla, was an inmate at Stillwater State Prison.

On June 5, 1974, one week before he was to be released, Susla was severely injured while working on a punch press in one of the prison factories. It is alleged that certain safety devices on the press were either lacking or had been overridden.

The prison industries, operated pursuant to Minn. St. 243.66, produce twine, rope, and farm machinery. Farm machinery sales in 1973 totaled $1,655,016.54, with a profit of $66,083.32.

Susla filed a claim with the State Claims Commission, pursuant to Minn. St. 1974, § 3.735.[1] He also brought this lawsuit against the state and Kenneth F. Schoen, commissioner of corrections, and Bruce McManus, warden of the prison, seeking $350,000 in damages. Defendants moved for summary judgment on the ground that the state's sovereign immunity from tort liability prevented this suit from being brought. That motion was granted as to the state. The motion was also granted as to the two individual defendants, the court holding that the only claim asserted against them was one of vicarious liability and that in such a case the state's immunity extended to them as well. Plaintiff appeals from this judgment.

The legal issues which we are called upon to decide are:

First: Is the State Claims Commission an exclusive remedy for inmates seeking to recover for injuries sustained while working in the state prison industries? If the answer to this question is in the affirmative, our inquiry is at an end, and that portion of the summary judgment in favor of the state must be affirmed. If, however, the answer is in the negative, we must decide:

Second: Does the State of Minnesota enjoy immunity from liability for injuries caused by its negligence in conducting proprietary activities? and

Third: Is the operation of a state prison factory a governmental or proprietary activity?

Finally, we must decide in any event whether defendants Schoen and McManus are entitled to immunity in this case.

## I.

The State Claims Commission was governed by Minn. St. 1974, §§ 3.66 to 3.84, Minn. St. 1974, § 3.735,[2] provided in part:

"Except for the claims excluded by section 3.752, the jurisdiction of the commission shall extend to the following matters:

\* \* \* \* \*

---

[1] Repealed by L. 1976, c. 331, § 42.

[2] Repealed by L. 1976, c. 331, § 42.

"(4) For injury to or death of an inmate of a state penal institution."

Minn. St. 1974, § 3.752,[2] provided:

"Unless specifically referred to it by the legislature, the jurisdiction of the state claims commission shall not extend to any claim:

\* \* \* \* \*

"(6)   With respect to which a proceeding may be maintained by or on behalf of the claimant against the state in the courts of the state."

Thus, if the plaintiff is entitled to bring this action in state court—if the state's sovereign immunity does not extend to this claim—the State Claims Commission does not have jurisdiction over the claim. Therefore, we cannot decide the question of the jurisdiction of the State Claims Commission by addressing that issue directly, but only by determining whether or not the state's immunity extends to this case.

## II.

In Nieting v. Blondell, 306 Minn. 122, 235 N. W. 2d 597 (1975), we abolished the tort immunity of the State of Minnesota for all claims arising after August 1, 1976, subject to any action taken by the legislature.[3] As the plaintiff's injury occurred on June 5, 1974, Nieting does not apply to it. If plaintiff is to prevail at all in his court action, he must show that the state's immunity as it existed prior to August 1 did not extend to claims such as his.

Plaintiff argues that the state is not immune from suit on torts which it commits in its proprietary, as opposed to its governmental, capacity. The state responds that the governmental-proprietary distinction applies only to local governmental units and not to the state. The fact of the matter is that there is no

---

[2] Repealed by L. 1976, c. 331, § 42.

[3] The legislature has responded by enacting L. 1976, c. 331, §§ 30 to 34, providing for tort claims against the state, and § 42, abolishing the State Claims Commission.

decision of this court either holding that the state is liable for torts committed in its proprietary capacity or holding that it is immune from such liability.

As a general proposition, the state was immune from tort liability prior to the Nieting decision and the effective date of L. 1976, c. 331, §§ 30 to 34.[4] However, in the field of tort liability of local governmental units—counties, school districts, municipal corporations, etc.—we drew a distinction between the governmental activities of those bodies and their proprietary activities. With respect to torts committed in carrying out governmental activities, the governmental unit was immune from suit;[5] with respect to torts committed in carrying out proprietary activities, the governmental unit was not immune.[6]

In none of our previous decisions did we draw the governmental-proprietary distinction with respect to the state. Professor Davis, in *Tort Liability of Governmental Units*, 40 Minn. L. Rev. 751, 773, writes:

"The central idea in the law of municipal tort liability is that a municipality is liable for its torts in the exercise of proprietary but not governmental functions. California applies the distinction to liability of the state; except for the patchwork of legislative changes, other states generally are immune from liability whether the activity is governmental or proprietary."

At no time, however, have we ever refused to hold the state liable for torts committed in proprietary activities; there is simply an

---

[4] See, Dunn v. Schmid, 239 Minn. 559, 60 N. W. 2d 14 (1953); Berman v. Minnesota State Agricultural Society, 93 Minn. 125, 100 N. W. 732 (1904).

[5] The immunity of local governmental units was abolished in Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N. W. 2d 795 (1962), subject to action by the legislature, which thereafter enacted Minn. St. c. 466.

[6] Reierson v. City of Minneapolis, 264 Minn. 153, 118 N. W. 2d 233 (1962); Nissen v. Redelack, 246 Minn. 83, 74 N. W. 2d 300 (1955); Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. 2d 18 (1947); Borwege v. City of Owatonna, 190 Minn. 394, 251 N. W. 915 (1933).

absence of authority. On this point, this is a case of first impression.

On the other hand, in *contract* cases it has long been the rule that the state is not immune when acting in its proprietary capacity.

"When the state steps into an industrial or commercial enterprise, it is subject to the same laws that govern and control individuals." State v. Horr, 165 Minn. 1, 4, 205 N. W. 444, 445 (1925).

"* * * [W]hile acting in its sovereign character the state is immune, but when it descends to the level of those with whom it associates and interests itself in any property and proprietary rights as distinguished from governmental prerogatives, it subjects itself to the same liability as any other litigant." The Youngstown Mines Corp. v. Prout, 266 Minn. 450, 473, 124 N. W. 2d 328, 344 (1963).

We can conceive of no justification for applying the governmental-proprietary distinction to the activities of local governmental units in tort cases but not to the activities of the state, especially when it has been applied to the activities of the state in contract cases. Thus, we hold that the sovereign immunity of the State of Minnesota from tort liability, as it existed up to the effective date of the Nieting decision and L. 1976, c. 331, did not extend to suits on torts committed in its proprietary capacity.

### III.

While the state offers many arguments that operation of the prison industries is a governmental function—that the industries serve to train and rehabilitate prisoners, that they are authorized by statute, and that all profits are used to finance the program itself—this case appears to be controlled by Reierson v. City of Minneapolis, 264 Minn. 153, 118 N. W. 2d 223 (1962). In that case, a prisoner was injured while working in a sawmill at the Minneapolis Workhouse. We said in that case:

"In making our determination, we should recognize a distinc-

tion between the status of the plaintiff as a prisoner and his status as a workman employed in a business enterprise conducted by the municipality. It should readily be conceded that the incarceration of law violators is for the common good; that the maintenance of a workhouse is a governmental function; and that the municipality is not liable for injuries occurring to a prisoner as a result of activities which are reasonably related to the execution of his sentence. On the other hand, it should be admitted that the operation of a sawmill which produces a manufactured product for sale involves an element of special corporate benefit which characterizes it as a proprietary activity. Here the city has undertaken to engage in a manufacturing business in competition with private persons engaged in the same activity. The city lays great stress on the argument that the manufacture and sale of skids in 1958 was not a profit-making venture. It does not seem to us that this fact alone is controlling. The project was then in its early stages and it would not be unusual to expect that it would not operate at a profit. The controlling factor here is that the plaintiff is alleged to have sustained injuries while employed by the municipality in a competitive business enterprise which was expected to provide a financial return that would be of benefit to the municipal corporation. We observed in Hahn v. City of Ortonville, 238 Minn. 428, 435, 57 N. W. (2d) 254, 260 [1953], 'an enterprise is proprietary when it is profit making in the sense that when conducted by private persons it is operated for profit.' And in [Keever v. City of Mankato, (113 Minn. 55, 62, 129 N. W. 158, 160 [1910])] we said: 'When the municipality enters the field of ordinary private business, it does not exercise governmental powers.' We are therefore of the opinion that, where the municipality undertakes in the operation of its workhouse to use the labor of a prisoner in a competitive business enterprise, it should be held to the same standards of responsibility and required to exercise the same degree of care for the safety of such person as is required of others who engage in a like private enterprise." 264 Minn. 158, 118 N. W. 2d 227.

Here, the prison industries produce rope, twine, and farm machinery for sale to the public. Sales of farm machinery in 1973 exceeded one and one-half million dollars, returning a profit of $66,083.32. Under Reierson, this activity is proprietary.

It is true that Reierson contains the following dictum (264 Minn. 159, 118 N. W. 2d 228):

"This decision has no bearing on asserted wrongs which may occur in connection with the confinement of persons in state institutions. It appears that by Minn. St. 3.74 the legislature has given to the Legislative Claims Commission jurisdiction of such matters."

For the reasons given in part II of this opinion, that dictum is expressly disavowed. Because the operation of the prison industries program is a proprietary function, and because the immunity of the state did not extend to torts which it committed in its proprietary function, this claim may be maintained in the courts of this state. Thus, the State Claims Commission lacks jurisdiction over the claim and the award of summary judgment was not proper.

## IV.

This case presents the following anomaly: If plaintiff inmate had been injured because of some action related simply to his incarceration, he would not have been able to bring a tort action, the state being immune from suits on torts arising out of a governmental function.[7] Under the new statute, he may be able to sue.[8] If he had been a typical employee of the state, he would not have been able to bring this suit, as he would have been covered by the workers' compensation law.[9] However, because plaintiff is at one and the same time an inmate and a person who works subject to the direction of the state while acting in its pro-

---

[7] This is made clear in the excerpt from Reierson v. City of Minneapolis, 264 Minn. 153, 158, 118 N. W. 2d 223, 227 (1962), quoted above.

[8] L. 1976, c. 331, § 33(k).

[9] Minn. St. 176.011, subds. 9, 10.

prietary capacity,[10] he may be freed from both of these restrictions and able to bring this action. There is nothing in L. 1976, c. 331, which addresses this issue and which covers the case of the inmate who works subject to the direction of the state while acting in its proprietary capacity.

We requested counsel to address, at oral argument, the question of whether a person in the situation of plaintiff in this case would be entitled to recover benefits under the Minnesota Workers' Compensation law. We do not decide that issue, however, as we are of the opinion that it is one which is more properly considered by the trial court in the first instance. Upon remand, the parties will be free to raise the issue, if they so desire, by proper amendments to their pleadings. For the assistance of the trial court, if indeed the issue is raised, we note the expansive definition of the term "employee" in Minn. St. 176.011, subd. 9,[11] and the usage of the terms "compensation," "employed," and "employment" in Minn. St. 243.23, 243.61, and 243.66. The word "employer" as used in the Workers' Compensation law is a word of art having a different meaning than it does in other statutory contexts. We also caution that the persuasive authority of whatever case law there is from other jurisdictions must be tempered by any statutory differences between those jurisdictions and Minnesota.

## V.

Finally, there remains the issue of the personal liability of Messrs. Schoen, the commissioner of corrections, and McManus, the warden of the State Prison. The trial court ruled that the only claims asserted against the two were claims based upon respondeat superior, and that with respect to such claims, the defendants were clothed with the state's immunity. Once the state's immunity is recognized as inapplicable to this case, however, that

---

[10] Minn. St. 243.23, 243.61, 243.66.

[11] We note that the exclusion "other than an inmate" in Minn. St. 176.011, subd. 9(7) would not seem to apply to this case, for the plaintiff was not presumably a "voluntary uncompensated worker."

justification for entry of summary judgment in favor of the two individuals falls.[12]

It is settled law in Minnesota that a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong. Johnson v. Callisto, 287 Minn. 61, 176 N. W. 2d 754 (1970) ; Thiede v. Town of Scandia Valley, 217 Minn. 218, 14 N. W. 2d 400 (1944) ; Wilbrecht v. Babcock, 179 Minn. 263, 228 N. W. 916 (1930) ; Stevens v. North States Motor, Inc. 161 Minn. 345, 201 N. W. 435 (1925).[13]

There is no question that the duties of the commissioner of corrections and the warden in supervising the prison industries program call for the exercise of judgment and discretion. There are no allegations that the defendants committed a willful or malicious wrong. Thus, the summary judgment in favor of these defendants is affirmed.

## VI.

The judgment of the district court is affirmed in so far as it awarded summary judgment as to defendants Schoen and McManus. In so far as it awarded summary judgment to the

---

[12] Schoen and McManus are employees of the State of Minnesota. If the only claims asserted against them were vicarious, summary judgment would be proper, as a supervising employee is personally responsible for the tort of a subordinate employee only if he is himself at fault in appointing, supervising, or cooperating with the employee who committed the tort or unless he participated in, directed, or was negligent in failing to learn of and prevent the tort. Morgan v. Eaton's Dude Ranch, 307 Minn. 280, 239 N. W. 2d 761 (1976). See, Hitchcock v. County of Sherburne, 227 Minn. 132, 34 N. W. 2d 342 (1948). However, Count V of the complaint alleges the personal negligence of Schoen and McManus, and this rule thus cannot be used to justify the summary judgment.

[13] If the act complained of exceeded the officer's authority, the officer can be held liable, Nelson v. Babcock, 188 Minn. 584, 248 N. W. 49 (1933), but there is no such allegation in the instant case.

State of Minnesota, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.