Jane E. JOHNSTON, Appellant,

v.

**MICHAEL SHEA AND ASSOCIATES, et al. Defendants,**

**Hennepin County, Respondent.**

No. C6–87–2486.

Court of Appeals of Minnesota.

May 31, 1988.

Review Denied July 28, 1988.

Sonja R. Peterson, Minneapolis, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., Sara E. Wahl, Asst. Co. Atty., Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant initiated this civil suit on July 25, 1983, and requested the court to order Hennepin County Child Protection Services (HCCP) to file a report with the court as to its allegations and conclusions of child abuse.

Upon a Minn.R.Civ.P. 12.02 motion to dismiss, made in 1983, appellant's claims of negligent interference with contractual relations and negligent infliction of emotional distress were dismissed. In 1985, appellant amended her complaint to include claims for defamation and negligence in addition to her prior claims of intentional infliction of emotional distress and intentional interference with contractual relations, in addition to her claim brought pursuant to 42 U.S.C. § 1983.

In August 1987, Hennepin County moved for summary judgment on all claims

against them. The trial court granted respondent's motion for summary judgment as to the state tort claims, on the basis that the manner in which a child abuse investigation is conducted pursuant to Minn.Stat. § 626.556, and the conclusions drawn therefrom, are discretionary in nature and therefore immune from liability pursuant to Minn.Stat. § 466.03, subd. 6. Upon Hennepin County's motion to reconsider, the trial court granted summary judgment in respondent's favor, as to appellant's claims brought under 42 U.S.C. § 1983. The trial court found that appellant failed to present any evidence, as required by Minn.R.Civ.P. 56.05, to show any causal connection between respondent's investigation and appellant's loss of employment. Appellant's motion to reconsider was denied by the trial court, and judgment was entered. Jane Johnston appeals from the summary judgment granted in favor of Hennepin County. We affirm.

## FACTS

Appellant Jane Johnston is an accredited social worker specializing in the areas of adjustment to disease, child therapy—sexual abuse, family adjustment and clinical evaluation. She was associated with Michael Shea and Associates (Shea Clinic) for approximately eight months in 1982 and 1983 as a social worker. This was her first position involving private practice in the Twin Cities' area.

Appellant had an oral contract with Shea Clinic providing that she would receive 50% of her receipts and the rest would go to the clinic. A major portion of appellant's clients were referrals from HCCP to the Shea Clinic, which the Shea Clinic then assigned to her. Appellant never received a direct referral from HCCP prior to August of 1983, even though HCCP may have made direct referrals to other social workers.

In early May 1983, appellant and two other associates at the Shea Clinic told Michael Shea that they intended to leave and start their own clinic. The three associates' patients had the option of leaving the Shea Clinic and coming with them, or staying at the Shea Clinic. HCCP knew in early May that the three therapists would soon be leaving the Shea Clinic.

During 1983, appellant was counseling two girls from the D. family; R., age five, and C., age four, who had been referred to the Shea Clinic by HCCP, pursuant to court order, for therapy. Another child in the D. family had been physically abused by an unknown family member. During the course of therapy, appellant began to conclude that the girls' mother had physically abused the children. Appellant then informed the mother's counselor at Shea Clinic, Susan Devries, of her suspicions sometime in early May of 1983.

On May 17, 1983, the D. family social worker from HCCP, Deborah Silverstein, received a report from the girls' parents alleging that appellant had touched the girls in the breast area. Specifically, the children had stated that appellant had played "the poking game" in which appellant had poked them in the breast, naval and genital area with her finger during the therapy sessions with appellant.

On May 18, 1983, Silverstein informed her supervisor, Carol Murphy, of the allegations against appellant. HCCP employees conducted an investigation of these allegations as required by Minn.Stat. § 626.556 by interviewing the children separately and by interviewing and discussing the matter directly with appellant. They also interviewed the daycare staff, the children's parents, as well as child psychologists who were familiar with and conducted interviews of the children at HCCP's request. The HCCP investigation was conducted by Silverstein and supervised by Murphy.

The following day, Silverstein and the girls' daycare teacher, met at the D. family residence to interview the girls. At this time, neither girl stated that appellant had abused them. The following day, the teacher spoke with R. again, and R. stated that she did not play the poking game.

On May 20, 1983, Silverstein and Murphy met with Michael Shea regarding the allegations against appellant. These three then met with appellant and also Leslie

Faricy, the Shea Clinic Rule 29 officer, to discuss the charges. Appellant was told of the nature, source and content of the complaint brought against her by the children. Appellant denied the allegations and suggested the children were trying to get her into trouble for suggesting that their parents were physically abusive. Appellant agreed that the allegations were serious and acknowledged that an investigation was necessary. At the end of the meeting, Shea gave appellant a memorandum which suspended her employment at the Clinic pending resolution of the investigation. The memo also impounded all her client records and barred her from seeing any of her clients. Hennepin County had no involvement with the decision by Michael Shea to suspend appellant's employment, nor any knowledge of it, until it was announced by Shea. None of the Hennepin County employees had any knowledge of the contractual or financial dealings between appellant and Shea Clinic.

Shea and Faricy had told HCCP that they would interview the girls. Members of the Shea Clinic provided information to HCCP obtained from these interviews. Both Shea and Silverstein had attempted to obtain information from the children, but were unsuccessful. Scheduling difficulties also slowed the investigation. Dr. Susan Devries, a child psychologist at the Shea Clinic, interviewed the children in June and July regarding the allegations. The younger girl stated that her mom, dad, brother, Jane, Linda and Devries poked her in the nipples, naval and eyes. The older girl told Devries that the game was not fun and that Jane poked her in the naval, genital area and nipples and that this happened in Jane's room. Devries again interviewed the children while observed by Silverstein and Tom Price, who was associated with the Shea Clinic. At this time, R. stated that Jane, along with other people, played the poking game. C. specifically denied that Jane played the poking game. Devries concluded that one of the children had reported clearly and continually that inappropriate sexual behavior took place during therapy with appellant.

In June, Murphy had told at least one HCCP social worker to discontinue referring clients to appellant until the investigation was resolved. During the course of its investigation, HCCP made an effort to determine whether other children on its caseloads, who were in therapy with appellant, were reporting any similar sexually abusive behavior. Eight or nine social workers who had some of appellant's children were informed of the report of sexual abuse against appellant, and were asked to inquire generally of their clients whether any other abuse with appellant was occurring. This was done by HCCP for investigation purposes, to protect other clients from abuse, and to assess its potential for liability from other potential victims.

Based upon all of the information obtained during the course of its investigation and upon their experience, Carol Murphy and Deborah Silverstein concluded that they had valid reasons to believe that sexual abuse had occurred which constituted a "substantiated report of abuse" within the meaning of the Department of Public Welfare's social services manual. This conclusion was based on a number of factors, including the children's behavior in daycare, the children's reluctance to discuss the alleged abuse, the believable, unequivocal and unretracted statement of the older girl that only appellant had touched her in the genital and breast areas, and appellant's response. HCCP reported this conclusion to the Department of Public Welfare. A police report was sent to the Minneapolis Police Department Family Violence Division on June 28, 1983. Silverstein and Murphy told no one, except their supervisors, of their conclusions regarding appellant prior to her initiation of the suit.

## ISSUES

I. Is Hennepin County entitled to discretionary immunity from tort liability, pursuant to Minn.Stat. § 466.03, subd. 6?

II. Is Hennepin County entitled to summary judgment on appellant's claim brought pursuant to 42 U.S.C. § 1983?

ANALYSIS

I.

Summary judgment is proper under the Minnesota Rules of Civil Procedure when: the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. [The] facts shall be viewed in the light most favorable to the non-moving party. * * * If sovereign immunity bars the plaintiff's lawsuit, the State would be entitled to judgment as a matter of law and summary judgment would be proper.

*Ostendorf v. Kenyon*, 347 N.W.2d 834, 836 (Minn.Ct.App.1984).

The trial court granted summary judgment on appellant's state tort claims, stating that:

The manner in which the investigation of [appellant] was conducted involved constant balancing of several complex factors and is one which is clearly discretionary. Hennepin County is immune from tort liability under § 466.03 subd. 6 (1986).

Governments are generally subject to liability for their torts or those of its employees acting within the scope of their employment or duties. *See* Minn.Stat. § 466.02 (1986). The Legislature has provided few exceptions from tort liability, including, "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1986). "Discretionary immunity must be narrowly construed in light of the fact that it is an exception to the general rule of [governmental] liability." *See Larson v. Independent School District No. 314*, 289 N.W.2d 112, 121 (Minn.1979).

Minnesota courts have drawn a distinction between conduct at the planning or policy level (protected) and conduct at an operational or ministerial level (unprotected). *See Nusbaum v. County of Blue Earth*, 422 N.W.2d 713 (Minn.1988). While such labels are imprecise, they are helpful in determining whether government action is protected under the discretionary function exception. *Id.* at 719. "A court should always have at the forefront the idea that the exception seeks to protect policy-based decisions and prevent the impairment of effective government." *Id.*

The rationale for the discretionary acts exclusion is that governmental decisions which involve "the exercise of judgment or discretion" should not be second-guessed in negligence actions. "[C]ourts * * * are not an appropriate forum to review and second-guess the acts of government which involve 'the exercise of judgment or discretion.'" *Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982) (quoting *Sulsa v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)).

The trial court relied on *Cairl*, in finding that HCCP's actions were immune from tort liability because "investigations of child abuse allegations involve constant evaluation and decisionmaking throughout the entire process of the investigation."

The supreme court has since clarified the type of government action which constitutes discretionary functions:

The critical inquiry that emerges from our prior decisions, as well as the decisions of other state and federal courts * * * is whether the challenged governmental conduct involved a balancing of policy objectives. Not all acts involving the exercise of judgment by agents of the government are protected as discretionary functions. The protection afforded by the discretionary function exception does not extend to professional or scientific judgment where such judgment does not involve a balancing of policy objectives. Instead, government conduct is protected only where the state produces evidence that the conduct was of a policy-making nature involving social, political, or economical considerations.

*Nusbaum*, 422 N.W.2d at 722 (citations omitted).

HCCP's investigation was conducted pursuant to Minn.Stat. § 626.556 (1982). The

investigation of appellant was done in furtherance of the state's public policy of protecting children from sexual abuse. *See id.*, subd. 1. An additional policy of the state is:

> to require the reporting of suspected neglect, physical or sexual abuse of children; to provide for the voluntary reporting of abuse or neglect of children; to require the investigation of such reports; and to provide protective and counseling services in appropriate cases.

*Id.*

Appellant alleges that respondent's investigation of her was conducted in a tortious manner. Respondent has submitted affidavits and other evidence showing that its investigation was conducted in the manner required by statute and by court order. The decisions to inform other HCCP employees of the allegations and to prevent appellant from seeing any HCCP clients during the investigation were done for investigation purposes, to protect other clients from abuse, and to assess HCCP's potential for liability from other potential victims. We believe that such decisions involve a balancing of competing public policy objectives, rather than merely professional judgment. It is clear that the manner in which the investigation was conducted was mandated by policy considerations.

The manner in which HCCP conducts its investigations into allegations of sexual abuse of children is clearly discretionary, since investigations of child abuse allegations involve constant evaluation and balancing of policy objectives throughout the entire process of the investigation. The trial court correctly granted summary judgment on the state tort claims to Hennepin County on the basis of Minn.Stat. § 466.03, subd. 6.

The trial court's decision is supported on alternate grounds because appellant is relying on mere allegations in defending respondent's motion for summary judgment. Appellant produced no evidence showing that employees of HCCP acted with bad motives in investigating the complaint of sexual abuse against her, or in finding that

it was a substantiated report of abuse. *See* Minn.R.Civ.P. 56.05.

## II.

Appellant also brings a claim under 42 U.S.C. § 1983. Section 1 of the Ku Klux Klan Act of 1871 Rev.Stat. § 1979, as amended, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *

The trial court granted respondent's motion for summary judgment stating:

> [Appellant] has failed to establish * * * any causal connection between Hennepin County's conduct and her loss of livelihood.
>
> It is undisputed that [appellant] was terminated by Shea at the initial stage of the complaints, prior to any significant investigation or conclusions. Further, the termination memo presented to [appellant] on May 26, 1983, clearly stated that [appellant] was being terminated as a result of patient complaints. * * * Further, [appellant] has failed to present any evidence to establish that her inability to obtain further employment was caused by the County's conduct.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> [T]he Court finds that [appellant] has failed to present specific facts, by way of affidavit, deposition or otherwise, to defeat [respondent's] motion. Under Rule 56.05, mere averments of fact issues are insufficient and summary judgment is proper dismissing the § 1983 claims against Hennepin County.

To be successful in her section 1983 claim against Hennepin County, appellant must establish 1) that she was deprived of a federal constitutional right; 2) that the conduct alleged to be unconstitutional, im-

plemented a Hennepin County policy or was taken pursuant to Hennepin County custom, *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); and 3) that the policy or custom was the "moving force" behind the alleged constitutional violation. *Id.* at 694, 98 S.Ct. at 2037.

■ The Eighth Circuit Court of Appeals has held that the appellant must show not only that a policy or custom existed and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional. *See Dick v. Watonwan County,* 738 F.2d 939, 943 (8th Cir.1984). A plurality of the United States Supreme Court has recently reiterated this standard, stating that in a section 1983 action, a plaintiff must prove the existence of an unconstitutional policy promulgated by officials having final authority. *City of St. Louis v. Praprotnik,* — U.S. —, —, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988).

■ To be deprived of a federal constitutional right, appellant must have a property or a liberty interest. Property interests:

are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A liberty interest is not damage to one's reputation or the stigma which attaches to the state's action, but must result in a greater loss such as loss of employment or income due to the government's action. *See Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976).

■ Appellant has lost no property or liberty interest as a result of HCCP actions. HCCP had no employment relationship with appellant; made no referrals to appellant prior to October 1983, and had no duty to do so; had no involvement in appellant's suspension from employment by her private employer; took no action against appellant; and complied with the Data

Practices Act regarding their investigative report. Although no employment contract is necessary, appellant does not have a legitimate claim of entitlement to referrals, which is needed to successfully claim a property interest. Appellant has produced no affidavits or other evidence which show that Hennepin County denied her a property or liberty interest.

■ Although we find that appellant had no property or liberty interests, even if appellant had such an interest, she has not shown by affidavit or other appropriate manner that Hennepin County had a policy or custom which infringed on any constitutionally protected rights. Appellant claims that such policy or custom exists, since HCCP's manual states that social workers should generally presume that children are truthful reporting sexual abuse allegations. Assuming this is an official policy, this policy is too far removed to be causally related to plaintiff's injury. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). HCCP's decision to classify the allegations against appellant as a "substantial report of abuse," was based on more than a one-time allegation by a sole child, but was the result of a complete investigation and based on numerous factors.

■ Nor is the policy which authorizes the HCCP's investigation unconstitutional. The procedures set forth in Minn.Stat. § 626.556 do not unconstitutionally impinge on the rights of a party being investigated, while fulfilling the public policy of protecting children by investigating reports of child abuse. Appellant was accorded all process due while being investigated by HCCP for alleged sexual abuse of children. Appellant received notice of the charge and had an opportunity to respond to the charge. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Additionally, appellant failed to cite any specific facts in an affidavit which would show actual malice or bad faith constituting gross negligence on the part of HCCP workers in conducting their investigation, which is needed for a successful section

1983 claim. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985); and *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (negligence by state official does not approach the sort of abusive government conduct which the due process clause was designed to prevent; and section 1983 does not provide a remedy for this type of conduct.)

Finally, appellant has also failed to show that HCCP's policy of investigating allegations of child abuse was the moving force behind any alleged constitutional violation. Appellant claims that because HCCP was relying on the Shea Clinic to interview the girls, the investigations were so intertwined that the acts of Shea Clinic and HCCP cannot be distinguished. Even though HCCP may have been relying on Shea Clinic to interview the children, HCCP was not responsible for Shea Clinic's decision to remove clients from appellant. Appellant cites no specific admissible facts showing that HCCP asked Shea Clinic to confiscate appellant's records or prohibit appellant from seeing any clients. Nor has appellant established that any HCCP employee had any prior knowledge of, or involvement in, Shea's decision to suspend appellant from her counseling duties. Hennepin County did not take any action against appellant, except for investigating the child sexual abuse charge.

Significant to our decision is that appellant has not filed affidavits showing an improper motive by HCCP officials, or further evidence that HCCP's policy was unconstitutional, or that any other conduct by HCCP was unconstitutional, or that HCCP was the moving force behind any constitutional violation. Appellant has failed to show that there is a genuine issue for trial. As provided in Minn.R.Civ.P. 56.05:

> When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Appellant has not produced any specific admissible evidence which creates a genuine issue of material fact, by affidavits or otherwise. *See Myers v. Morris,* 810 F.2d 1437 (8th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). The trial court correctly granted summary judgment to Hennepin County on the 42 U.S.C. § 1983 claim.

## DECISION

Decisions made in a child abuse investigation conducted pursuant to Minn.Stat. § 626.556 are discretionary decisions and are immune from tort liability under Minn. Stat. § 466.03, subd. 6, due to the necessity of balancing policy objectives. Appellant has failed to set forth specific factual evidence sufficient to create genuine issues of material fact for each requirement of her section 1983 action, and on the evidence presented, Hennepin County is entitled to judgment as a matter of law.

Affirmed.