Uwe KIPP, et al., Respondents,

v.

Warren SAETRE, et al., Defendants,

Thomas Rosenthal, individually and as Probation Agent for Crow Wing County, et al., Appellants,

John Erickson, individually and as Assistant Public Defender, Respondent.

No. CX–89–1765.

Court of Appeals of Minnesota.

May 1, 1990.
Review Denied June 26, 1990.

A. Keith Hanzel, St. Paul, for Uwe Kipp, et al.

Jon P. Parrington, Pustorino, Pederson, Tilton & Parrington, Minneapolis, for appellants.

Timothy Murphy, St. Paul, for John Erickson.

Hubert H. Humphrey, III, State Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae Minnesota County Attys. Assoc.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and LESLIE,* JJ.

## OPINION

HUSPENI, Judge.

Appellants, a county prosecutor and a county probation officer, were sued by respondent, who alleged that they were responsible for his improper incarceration without a probation revocation hearing. Appellants' motion for summary judgment on the grounds of their absolute or qualified immunity from a civil rights claim and their official immunity from false arrest and false imprisonment claims was denied by the trial court. We reverse and remand for entry of summary judgment in favor of appellants.

### FACTS

Respondent Uwe Kipp, a West German national, pleaded guilty to a charge of selling cocaine in Brainerd, Minnesota, in 1979. His felony conviction left him subject to deportation by the Immigration and Naturalization Service (I.N.S.). In order to avoid his sentence of one to five years, Kipp decided to return to West Germany voluntarily. The judge accordingly issued, and Kipp accepted, an amended sentencing order which required that Kipp leave for West Germany on May 22, 1980, that he show a copy of the sentencing order to the American Embassy in West Germany, which would verify his return by notifying

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

the court, and that he be on unsupervised probation in West Germany for five years. In March, 1981, Kipp left West Germany for Grand Forks, North Dakota.

In June, 1981, a rumor of Kipp's return to Minnesota reached his probation officer, appellant Rosenthal. Knowing that Kipp was on probation to the court, Rosenthal passed the rumor on to the judge who had amended Kipp's sentence. The judge then issued a warrant for Kipp's apprehension and detention, and directed Rosenthal to inquire whether Kipp had reported to the American Embassy in Germany, and how he had re-entered the United States.

In 1983, Kipp pleaded guilty in Minnesota to aggravated DWI and to fleeing a police officer. His sentence was stayed, and he did not disclose his probationary status or his prior felony conviction. In 1984, Kipp was again arrested on aggravated DWI, this time in North Dakota. He refused the request of Crow Wing county officials to return to Minnesota for proceedings on his outstanding warrant, and resisted extradition proceedings.

Kipp was again arrested on a traffic offense in June, 1985, in Polk County, Minnesota. The judge responsible for Kipp's 1979 sentence informed appellant Rathke, a county prosecutor, that he was revoking the stay of the earlier sentence and committing Kipp to the St. Cloud prison. When Rathke asked the judge about a revocation hearing, the judge asserted that such a hearing was unnecessary. The judge directed Rathke to write the Crow Wing County clerk that, when a warrant of commitment was received, it should be given to the Crow Wing County Sheriff with instructions to transport Kipp to St. Cloud. Rathke wrote the letter as the judge directed, but the letter had no effect on the incarceration of Kipp, who had already been transported pursuant to the judge's

directions before Rathke's letter reached the clerk.[1]

A few days later, Kipp's wife met with respondent John Erickson, the public defender who had defended Kipp on the 1979 cocaine charge. She asked Erickson to represent Kipp in opposing his imprisonment in St. Cloud. Erickson attempted to persuade Kipp that the best way of opposing his imprisonment would be a petition for habeas corpus, but Kipp chose not to file such a petition. Erickson therefore wrote to the judge, explaining that although he had not specifically been appointed as public defender for Kipp, he felt he had a responsibility to act as his public defender, that he understood Kipp was serving a prison term because of the judge's belief that Kipp had violated probation, that it was not clear that Kipp had been heard, and inquiring if a hearing had been scheduled. The judge responded that Erickson should make an application for a hearing, and that the court would set a time for a hearing "if such a hearing is indicated." A hearing was then scheduled, but it was never held because Kipp was released on a detainer to the I.N.S. prior to the scheduled date.

Kipp's appeal to this court from his warrant of commitment was dismissed as an appeal from a non-appealable order. At a subsequent postconviction proceeding, it was determined that Kipp had not violated the terms of his probation by returning to the United States, that although he had violated the terms of his probation by committing misdemeanors in both Minnesota and North Dakota, he was entitled to a revocation hearing, that his sentence had expired, and that he was no longer subject to the department of corrections.

Kipp then sued Rathke, Rosenthal, Erickson, and the judge, among others, for in excess of $50,000 in damages and attorney fees on the grounds that his rights had been violated and that he had been falsely

**1.** The judge was originally a defendant in this case. He moved to have the claims against him dismissed on the basis of Minn.R.Civ.P. 12.02(e), failure to state a claim upon which relief can be granted. Following a hearing, Kipp's claims

against the judge were dismissed with prejudice. We note the absolute immunity granted to judges. *See Peterson v. Knutson,* 305 Minn. 53, 233 N.W.2d 716 (Minn.1975); *Zimmerman v.*

arrested and imprisoned.[2] Rathke and Rosenthal moved for summary judgment, the trial court denied their motion, and they appeal from this denial.

### ISSUES

1. Is appellant county prosecutor entitled to absolute immunity or to qualified immunity from a civil suit under 42 U.S.C. § 1983?

2. Is appellant probation officer entitled to absolute immunity or to qualified immunity from a civil suit under 42 U.S.C. § 1983?

3. Are appellants entitled to official immunity from a common law claim of false arrest and false imprisonment?

### ANALYSIS

■ While the denial of a motion for summary judgment is not enumerated among the appealable decisions listed in Minn.R.Civ.App.P. 103.03, both common sense and case law indicate that the right to immunity from litigation could not exist if there were not a corollary right to appeal from a denial of that immunity.

> [A]n order denying summary judgment on the ground of immunity from suit is a final judgment or order for purposes of appealability * * * because the immunity is an *immunity from suit* rather than a mere defense and the immunity is effectively lost if a case is erroneously permitted to go to trial.

*Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986) (emphasis in original). In *Erickson v. County of Clay*, 451 N.W.2d 666 (Minn.Ct.App.1990), this court recently reversed in part the denial of a motion to dismiss brought pursuant to Minn.R.Civ.P. 12.02 by county prosecutors and a county investigator because the claims were based on acts inherent in the prosecutorial function. Immunity supported the granting of a motion to dismiss, based only on the pleadings, in *Erickson*. Here that immunity is sought in the expanded record on a summary judgment motion. Review of the trial court's determination is proper pursuant to *Anderson* and *Erickson*.

Before considering the specific question of the immunity of Rathke and Rosenthal, we note that the doctrine of judicial and quasi-judicial immunity may most appropriately be viewed as one element in a complex system, which provides other means to the ends foreclosed by immunity.[3]

### 1. THE IMMUNITY OF APPELLANT COUNTY PROSECUTOR

■ The absolute immunity of prosecutors was established by the United States Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976):

> in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.

(Footnote omitted.) *Imbler* is based on a broad consideration of the entire judicial system rather than a narrow view of the prosecutor's role, and evinces concern both for performance of the prosecutorial func-

---

*Lasky*, 374 N.W.2d 212 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 26, 1985).

**2.** Issues pertaining to Erickson are not raised on appeal; all claims against him have been tentatively settled.

**3.** The immunity granted to judges and subordinate members of the judicial system does not deprive defendants of all recourse against incarceration. For example, Minn.Stat. § 589.01 (1988) provides:

> A person imprisoned or otherwise restrained of liberty, except persons committed or detained by virtue of the final judgment of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued

upon the judgment, may apply for a writ of habeas corpus to obtain relief from imprisonment or restraint.

Kipp's public defender advised him to petition for a writ of habeas corpus. Had he done so, and been denied the writ, Kipp would have had the right to appeal.

> A party aggrieved by the final order in proceedings upon a writ of habeas corpus may appeal to the court of appeals as in other civil cases * * *.

Minn.Stat. § 589.29 (1988). Kipp decided to forego these remedies, and confine himself and his attorney to seeking the revocation hearing the judge had believed unnecessary.

tion and for wrongs which may be visited upon a defendant.

The ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to § 1983 liability.

\* \* \* \* \* \*

To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

*Id.*, 424 U.S. at 427–28, 96 S.Ct. at 993–94 (footnote omitted). This immunity is contingent not on the status but on the particular function of the prosecutor; it is absolute, not merely qualified.

[If the prosecutor's] activities were intimately associated with the judicial phase of the criminal process, [they] were functions to which the reasons for absolute immunity apply with full force.

*Id.*, 424 U.S. at 430, 96 S.Ct. at 995 (footnote omitted). *Imbler*'s focus on function rather than status as the factor determining absolute immunity was quoted in *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir.1987), *cert. denied* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), a case arising in Minnesota:

[I]mmunity depends not upon [appellant's] status as a prosecutor but upon the "functional nature of the activities" of which [respondent] complains \* \* \*.

(Quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995). Rathke's affirmative acts at issue here are conversations with the judge and a letter relaying the judge's instructions to the court administrator: their functional nature was a part of the judicial process.

Kipp alleges that Rathke's immunity for these actions would not extend to an omission, i.e. the failure to arrange a revocation hearing despite the judge's assertion that such a hearing was unnecessary. However, the Minnesota Supreme Court in *Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210 (Minn.1981), affirmed a grant of summary judgment based on absolute immunity to a prosecutor accused not of an action but of an omission. *Brown* relied on *Imbler* to establish the relationship between public prosecutors and the judicial system's immunity.

Because public prosecutors must exercise a discretionary judgment on the basis of evidence presented to them, many \* \* \* courts refer to prosecutors as "quasi-judicial" officials, and hence characterize their immunity as "quasi-judicial" in nature.

The concept of quasi-judicial immunity is not new to Minnesota. Judicial officers are absolutely immune from civil liability for acts done while acting in their judicial capacity, regardless of motive.

*Id.* at 213–14 (citation omitted). It would be logically inconsistent for case law to subject to liability those individuals acting pursuant to explicit court directives. To deny the protection of immunity under such circumstances might prompt officers of the court to refuse to obey a judge's directives for fear of personal liability. Kipp's claim that Rathke improperly "allowed" the judge's orders to be effectuated assumes that a prosecutor is free to disregard a judicial order with which he or she disagrees.

■ Kipp also argues that since there was no revocation hearing, there was no adversarial function, and therefore Rathke was outside the judicial framework, and not entitled to the protection of immunity. We cannot agree. Ex parte proceedings can be part of the judicial process even as advocacy proceedings are. *See* Black's Law Dictionary 517 (5th ed. 1979). Rathke's failure to arrange a hearing which the judge had said was unnecessary occurred within the judicial context, and Rathke's immunity extends to it.

■ In view of our determination that Rathke had absolute immunity, we are not required to address the issue of his qualified immunity. Nevertheless, even if Rathke was not entitled to absolute immu-

nity, we believe he would be entitled to the qualified immunity afforded government personnel in the performance of their duties. This doctrine was set forth definitively in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The supreme court refined this holding in *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986): "if officers of reasonable competence could disagree on this issue, immunity should be recognized." Therefore, if reasonable prosecuting attorneys could disagree as to the appropriateness of Rathke's conduct, he is entitled to qualified or "good faith" immunity.

Kipp cites the ABA standards and the Minnesota Rules of Professional Conduct to demonstrate that prosecutors have a duty to enforce the law and to see that defendants receive procedural justice. He then alleges that Rathke not only breached this duty but also violated Kipp's constitutional rights by "condoning" the judge's determination to revoke Kipp's probation without a hearing. However, the duty to provide revocation hearings rests with the court itself. Minn.R.Crim.P. 27.04, subd. 2(1)(b). Even assuming arguendo that Rathke did have a duty to oppose the judge's decision to proceed without a hearing, he attempted to fulfill this duty by suggesting to the judge that a hearing was necessary. Since reasonable prosecutors could disagree as to how to challenge a judge's allegedly inappropriate determination, the *Malley* standard would afford qualified immunity.

## 2. THE IMMUNITY OF APPELLANT PROBATION OFFICER

■ The absolute liability of probation officers has been upheld when the officer is acting in association with a judge.

> [P]robation officers serve a function integral to the judicial process when they prepare presentence reports for a judge. In that capacity they "act as an arm of the sentencing judge" in light of the judge's request that they perform the function, the statutory authority for this delegation of duty and the judge's use of the report in performing judicial duties * * *.
>
> * * * The absolute immunity which is accorded persons acting as an integral part of the judicial process protects them from having to litigate the manner in which they performed their delegated functions.

*Myers*, 810 F.2d at 1467 (citations omitted). Kipp complains that Rosenthal informed the judge that Kipp was reputedly in the community and followed the judge's subsequent directives. Since Rosenthal knew the judge believed Kipp to be on probation in West Germany, Rosenthal had a professional obligation to tell the judge that Kipp was reputed to be back in the community. The judge made decisions based on this information and directed Rosenthal accordingly. Rosenthal himself cannot be held to have had either the legal expertise to evaluate the judge's directives, nor the authority to refuse to obey on the grounds that the judge's directives might be illegal.

Nor can Rosenthal be held to have had a duty to differentiate between a court order and a judge's directive. This fact defeats Kipp's argument that while Rosenthal might have had absolute immunity in obeying the former, he had none in obeying the latter. Requiring a probation officer to decide which of a judge's instructions he will obey and which he will reject would place him in an untenable position and clearly be inimical to the public interest. Recognizing that a probation officer may follow a judge's specific directives without fear of personal liability accords with the "arm of the judge" observation in *Myers* and the "quasi-judicial" immunity discussed in *Brown*. Rosenthal is entitled to absolute immunity for his actions in following specific directives.

■ Again, our determination that Rosenthal is entitled to absolute immunity makes it unnecessary for us to address the issue of his qualified immunity. However, the *Harlow* standard applies as fully to Rosenthal as to Rathke:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Rosenthal's conduct in relaying to the court the rumor that Kipp had been seen in the community, and in following the court's directions relative to Kipp's apprehension, did not violate Kipp's clearly established statutory or constitutional rights.

Kipp contends that any reasonable probation officer would have believed Kipp was entitled to a revocation hearing, and that Rosenthal therefore had a duty to oppose the judge's decision to proceed without such a hearing. However, a reasonable probation officer could also have believed that a judge's knowledge of the law was superior to his own, and that his duty was to follow the judge's order. The fact that these conflicting beliefs reasonably could exist supports Rosenthal's qualified immunity: "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096.

■ 3. THE OFFICIAL IMMUNITY OF APPELLANTS TO THE COMMON LAW CLAIMS

> The official immunity doctrine provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong."

*Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn.1988) (quoting *Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). Kipp maintains that Rathke and Rosenthal were both willful and malicious in their treatment of him and in their "reck-less disregard" of his rights, particularly his right to a revocation hearing. Since the decision to deprive Kipp of a hearing was made not by Rathke and Rosenthal but by the judge, their discretion was not exercised, maliciously or otherwise. Kipp also found malice in Rathke's and Rosenthal's role in "orchestrating" his release from prison before the revocation hearing was held, but there is no evidence of malice in any acts of either. In any event, Kipp was released on a detainer to the I.N.S., not on any authority of Rathke or Rosenthal.

DECISION

Denying the absolute immunity of county prosecutors and county probation officers who are acting as part of the judicial system would set a precedent inimical to the functioning of our system. We therefore reverse the denial of appellants' motion for summary judgment and remand for entry of judgment for appellants.

Reversed and remanded.

DAVID R. LESLIE, Judge (dissenting).

My opposition to the majority opinion is twofold: I object both to the premise on which their reasoning is based, and to the application of that reasoning to these appellants.

The majority upholds and extends the principle of judicial immunity to civil suits. I find this principle inherently suspect, and am thus opposed to its extension. Admittedly, if a judge is to be immune from any prosecution for his actions, it may well defy logic to deny that immunity to those required to obey his orders (although a strong argument can be made that a knowledgeable county attorney and probation officer should stand up and refuse to follow an order they know to be contrary to law). However, in my view, exonerating county prosecutors and county probation officers who offer the simple defense of "following the judge's orders" may be convenient but merely begs the question: if the judge's orders were erroneous, and the prosecutor and probation officer knew them to be erroneous, absolute immunity should be extended not to all but to none.

In this instance, I find it incredible that neither the prosecutor nor the probation officer knew respondent was entitled to a probation revocation hearing before being incarcerated. Both appellants had considerable experience in their jobs; both must have been well aware of the procedures designed to prevent arbitrary or unjustified incarcerations. Respondent was entitled to have those procedures followed in his case, and should be entitled to pursue those who failed to follow them, particularly if it is established that their conduct was willful or malicious. In this case a person wronged is left without a remedy. It is an example of justice without a human face. The majority opinion in applying what they perceive to be the law has considered only the convenience of the thing and forgotten about the justice of the matter. I would affirm the trial court's denial of summary judgment.