Marianne BURNS, Respondent,

v.

STATE of Minnesota, Appellant.

No. C1–97–937.

Court of Appeals of Minnesota.

Nov. 10, 1997.

Jeffrey R. Anderson, David W. Merchant, Reinhardt & Anderson, St. Paul, for respondent.

Hubert H. Humphrey III, Attorney General, Gary R. Cunningham, Assistant Attorney General, St. Paul, for appellant.

Considered and decided by PARKER, P.J., and DAVIES, and FOLEY, JJ.

## OPINION

PARKER, Judge.

The state of Minnesota appeals a district court order denying its motion for summary judgment. Because a genuine issue of fact exists as to whether the government official acted wrongly with malice or willfulness, official immunity does not bar these whistleblower claims against the state. We affirm.

## FACTS

Respondent Marianne Burns worked as a court reporter in Ramsey County District Court from 1977 until her discharge in June 1995. When the judge for whom she had worked for 17 years retired, she began working for Judge Sands [1] in July 1994. By April of 1995, Sands expressed his dissatisfaction with Burns to Chief Judge Fitzpatrick. At a meeting on May 16, 1995, when questioned by Burns, Sands told Burns he was not unhappy with her work. At this same meeting, Burns requested more breaks and told Sands that she had tendinitis. Sands reported Burns' tendinitis to O'Connell, the court personnel manager. O'Connell arranged a meeting with Burns shortly after the Burns/

---

1. Judge Sands was named as a defendant in the district court proceedings. In an order filed April 30, 1996, the district court dismissed Burns' claims based on the Human Rights Act and Americans with Disabilities Act. Although the court found that fact issues precluded summary judgment on Burns' whistleblower claims against the state, the court dismissed Burns' claims against Judge Sands, ruling that he was not an employer under the whistleblower statute.

Sands meeting. At her meeting with O'Connell, Burns expressed her concern that Sands "was trying to do [her] in" with overwork. She also reported to O'Connell that Sands made racist remarks and reported other conduct that would violate the Minnesota Code of Judicial Conduct. If made in good faith, Burns' report of Sands' conduct would be protected by the Whistleblower statute, Minn.Stat. § 181.932 (1996).

O'Connell reported Burns' conversation to Sue Alliegro, the district court administrator, who in turn told Chief Judge Fitzpatrick, who met with Sands shortly after May 16, 1995, and told him that Burns alleged he had made racist remarks. With Sands' agreement, court officials attempted to arrange a transfer for Burns. These attempts were unsuccessful. Sands, assuming that a transfer had been arranged, offered his court reporter position to another court reporter about June 7 or 8, 1995. Burns called in her absence for the week of June 13, 1995, stating she was unable to work, and Sands terminated her employment the next day.

Appellant state of Minnesota sought summary judgment, claiming vicarious official immunity protected it from Burns' whistleblower claims. The district court denied the state's motion, and the state appeals from the order denying summary judgment.

## ISSUE

Is the state protected by vicarious official immunity?

## ANALYSIS

■■■ Summary judgment is proper when there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. The district court's denial of summary judgment is appealable because the state based its motion on immunity. See McGovern v. City of Minneapolis, 475 N.W.2d 71, 72 (Minn. 1991.)[2] Our review of a denial of summary judgment based on a claim of immunity focuses on the legal issue of immunity and

presumes the facts alleged by the nonmoving party are true. See Waste Recovery Co–op. of Minnesota v. County of Hennepin, 517 N.W.2d 329, 332 (Minn.1994) (governmental immunity presents a question of law reviewed de novo); Electric Fetus Co. v. City of Duluth, 547 N.W.2d 448, 451 (Minn.App. 1996) (presuming nonmoving party's facts true when reviewing denial of summary judgment based on claim of immunity and fact issues relate to claim of immunity), review denied (Minn. Aug. 6, 1996).

This case again questions the applicability of official immunity to violation, by a government official, of a statute designed to protect certain employee rights. See e.g. State by Beaulieu v. Mounds View, 518 N.W.2d 567, 571 (Minn.1994) (official immunity available as defense to claim based on violation of Human Rights Act); Rico v. State, 472 N.W.2d 100, 106 n. 3 (Minn.1991) (declining to decide if official immunity was a defense to a whistleblower claim when the cause of action arose before the statute was enacted). Burns' remaining claims are based on the Whistleblower Act.

An employer shall not discharge * * * an employee * * * because:

(a) the employee * * * in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer.

Minn.Stat. § 181.932 (1996). The state argues that official immunity protects it from Burns' claims.

■■■ Official immunity protects government officials "charged by law with duties which call for the exercise of * * * judgment or discretion * * * unless [the official] is guilty of a willful or malicious wrong." Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn.1988) (quoting Susla v. State, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)). "[I]t is a common law doctrine, applying to individual governmental actors, who remain immune only if they do not act maliciously or intentionally." Janklow v. Minnesota Bd. of

**2.** Burns argues that the state's appeal is improper because the state does not assert any legal justification for its immunity claim and instead relies on fact-based arguments. Burns did not

file a notice of review, and accordingly we do not consider her challenge to this appeal. See Minn. R. Civ.App. P. 106 (respondent may obtain review by filing notice of review).

*Examiners for Nursing Home Adm'rs,* 552 N.W.2d 711, 716 (Minn.1996). Malice in the context of official immunity means intentionally committing an act that the official has reason to believe is prohibited. *Beaulieu,* 518 N.W.2d at 571.

In *Janklow,* the supreme court held that the Whistleblower Act impliedly waived statutory immunity. *Janklow,* 552 N.W.2d at 718. Recognizing that statutory immunity protected government conduct that was an abuse of discretion, the court reviewed the differences between statutory and official immunity:

> [F]undamental to our analysis in Beaulieu was * * * the presence of a "safety valve." That "safety valve" is the notion that official immunity does not protect actions taken willfully or maliciously. We concluded in Beaulieu that acts that were violative of the Human Rights Act would also likely come within the "willful or malicious" exception and therefore determined that the Human Rights Act and common law official immunity could operate in concert.

*Id.* at 717 (citations omitted). Nevertheless, the court held that official immunity was not available because

> no individual "official" is responsible for the acts that respondent claims were in violation of the Whistleblower Act. Thus, we conclude that official immunity does not apply to the facts before us.

*Id.* at 716.

■ Here, an individual official is responsible for the acts that respondent claims violated the Whistleblower Act, and we hold that official immunity may be available to protect the government from liability for that conduct. We follow the analysis used by the supreme court in *Beaulieu* and anticipate few circumstances where a public official would violate the Whistleblower Act without committing a malicious or willful wrong. *Accord Janklow,* 552 N.W.2d at 718 (recognizing "[i]f public officials are allowed to act against 'whistleblowing' subordinates in malicious and willful ways * * * the purpose of the Whistleblowing Act will be utterly thwarted"). We acknowledge some of the same concerns expressed by the dissent in *Beaulieu,* but conclude that because of the

"malicious and willful" exception, the Whistleblower Act does not impliedly waive official immunity. *See Beaulieu,* 518 N.W.2d at 571 (official immunity not impliedly waived by Human Rights Act); *but see Beaulieu,* 518 N.W.2d at 575 (J. Wahl dissenting) (arguing that the purpose of the Human Rights Act cannot be accomplished by grafting common law immunity onto the statute). *Cf. Janklow,* 552 N.W.2d at 716 (holding that whistleblower act impliedly waived statutory immunity but not adopting court of appeals' analysis that act impliedly waived official immunity); *compare Janklow v. Minnesota Bd. of Examiners for Nursing Home Administrators,* 536 N.W.2d 20, 24 (Ct.App.1995) (holding Whistleblower Act impliedly waived official immunity), *aff'd on other grounds Janklow,* 552 N.W.2d at 717–18.

■ Having determined that official immunity may be available to protect the state against whistleblower claims, we nevertheless affirm the district court's denial of summary judgment in this case. The decision to discharge an employee can be a discretionary decision protected by official immunity. *See Janklow,* 552 N.W.2d at 717. However, a decision to discharge in violation of the Whistleblower Act removes the protection of official immunity if the official had reason to know such conduct was proscribed. *Rico,* 472 N.W.2d at 107 (malice shown when official has reason to know that conduct is prohibited). The state does not dispute that Sands was aware of the Whistleblower Act's proscription against retaliatory discharge. Instead, the state argues that Sands' act of discharging Burns was reasonable and not retaliatory because he formed his intent to discharge her before she reported his conduct.

The state concedes in its reply brief that "it is undisputed that the decision to terminate respondent did, indeed, occur after her alleged report." On its face, this conduct could support a retaliatory discharge claim under the Whistleblower Act, shifting the burden to the state to establish a legitimate nonretaliatory reason for the discharge. *See Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 445 (Minn.1983) (causal connec-

tion may be inferred by adverse employment action following closely after protected conduct). The state argues the evidence is undisputed that Sands formed his intent to replace Burns before her report, and this sequence establishes that Sands' act of discharging Burns was without malice. However, Burns' claim focuses on her discharge, and the reasonableness of that act is disputed.

The district court correctly ruled that genuine issues of material fact exist as to when Sands formed his intent to discharge Burns. The state relies on Chief Judge Fitzpatrick's deposition testimony that Sands, in April, expressed his desire no longer to work with Burns. The state characterizes this as undisputed evidence that Sands formulated his intent to discharge Burns before she reported his conduct to O'Connell. What the state is arguing, however, is an inference that Sands had formulated his intent to discharge Burns when he expressed his dissatisfaction to Judge Fitzpatrick in April. However, the same testimony could support a contrary inference that Sands had not yet decided what to do about the situation and was simply discussing the matter with the chief judge. Viewing the evidence and factual inferences in favor of Burns, a genuine issue of material fact precludes summary judgment. *See Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn. 1981) (factual inferences must be resolved against the party moving for summary judgment).

**Affirmed.**

DANIEL F. FOLEY, Judge * (concurring specially).

I concur in the result.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

art. VI, § 2.