**Fredric V. JANKLOW, Respondent,**

v.

**MINNESOTA BOARD OF EXAMINERS FOR NURSING HOME ADMINISTRATORS, and Michael Gibson, in his official capacity as Chairman of the Minnesota Board of Examiners for Nursing Home Administrators, Appellants.**

No. C6–95–816.

Court of Appeals of Minnesota.

Aug. 22, 1995.

Review Granted Oct. 27, 1995.

---

Hubert H. Humphrey, III, Atty. Gen., Steven M. Gunn, Asst. Atty. Gen., St. Paul, for appellants.

Michael J. Tostengard, Briggs & Morgan, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

PARKER, Judge.

Respondent Janklow sued his former employer for dismissing him in violation of the Whistleblower Act. Appellant board replied that Janklow failed to make a prima facie case and that the board, a government entity, was immune from suit. The district court denied the board's summary judgment motion. We affirm.

## FACTS

The Minnesota Board of Examiners for Nursing Home Administrators ("BENHA") is a state regulatory board. BENHA hired Fredric Janklow as its executive director in 1994. Janklow came into conflict with BENHA members shortly after he assumed his post. BENHA attributes the breakdown to

Janklow's general ineffectiveness. BENHA members claim Janklow often appeared unprepared at meetings, failed to produce expected paperwork, and was unable to communicate with BENHA's other administrative employee.

Janklow identifies other reasons for his deteriorating relationship with BENHA. He alleges that he upset BENHA members by refusing to adopt the easygoing management style of his predecessor. Janklow feared many accepted practices violated rules and laws governing BENHA. In particular, Janklow refused to provide a BENHA member with copies of complaints under investigation; in a March 1994 letter to BENHA, Janklow stated that it would be a violation of the Data Practices Act to comply with board member Erickson's request. Janklow claims he also declined requests to share names of complainants with administrators named in the complaints. Janklow further alleges that he discovered violations of open-meeting laws, travel reimbursement improprieties, and the inappropriate circumvention of the Attorney General's Office in closing some complaint files.

Janklow informed two government entities of the supposed violations. He discussed them with Assistant Attorney General Penny Troolin, who apparently acknowledged the validity of his concerns. On October 15, 1993, Janklow sent a memorandum to the BENHA chair and vice chair regarding "procedures in violation of rules" and the need to change some rules "to conform to statute." Janklow claims they replied that addressing these violations was not a priority. The record shows that other BENHA members took a similar position upon learning of Janklow's concerns.

In February 1994, Janklow alleges, BENHA chair Gibson warned Janklow that several BENHA members were upset with him over his memoranda. At its May 20, 1994, meeting, BENHA voted to remove Janklow as executive director after only ten months on the job. Janklow filed suit. This appeal follows the district court's denial of BENHA's motion for summary judgment based on immunity from suit.

## ISSUES

**I.** Did Janklow fail to establish a prima facie claim under the Whistleblower Act?

**II.** Does official immunity shield BENHA from Janklow's claim?

## DISCUSSION

■ Minnesota law entitles government entities to interlocutory review of denials of summary judgment motions predicated on immunity claims. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 73 (Minn.1991). Thus, BENHA's appeal is not premature.

### I.

The Whistleblower Act prohibits punishing or discharging an employee in retaliation, if:

(a) the employee * * * in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;

\* \* \*

(c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

Minn.Stat. § 181.932, subd. 1(a), (c) (1994). The Act defines "employer" to include "the state and any political subdivision of the state." *Id.* § 181.931, subd. 3 (1994).

■ Summary judgment is appropriate when no genuine issues of material fact exist and judgment is proper as a matter of law. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). BENHA argues that the district court erred by denying summary judgment because Janklow failed to make a prima facie showing that he was a whistleblower entitled to the protection of section 181.932. Specifically, BENHA contests Janklow's assertion that he reported violations within the meaning of subdivision 1(a). *See* Minn.Stat. § 181.932, subd. 1(a). BENHA characterizes Janklow's statements and memoranda as

"feedback" or "expressions of displeasure" to his employer, rather than "reports."

■ Because section 181.931 does not define "report," the statute offers no basis to give the verb a meaning other than its dictionary definition: "1. To make or present an often official, formal, or regular account of. 2. To relate or tell about; present." *American Heritage Dictionary* 1531 (3rd ed. 1992). Janklow spoke to an assistant attorney general and wrote a memorandum expressing his concerns. Such conduct amounts to relating or presenting concerns in an essentially official manner. Given the definition of "report," we cannot agree that, as a matter of law, Janklow did not report violations to a governmental body. *See Fabio,* 504 N.W.2d at 761 (summary judgment appropriate only when record shows that either party is entitled to judgment as a matter of law); Minn. Stat. § 181.932, subd. 1(a).

More importantly, BENHA's argument ignores subdivision 1(c) of the statute. Aside from whether Janklow reported violations, Janklow offers substantial evidence tending to show he refused to perform an action for his employer because he believed the action would violate state law. Such a refusal appears to fall within the scope of subdivision 1(c). Janklow's October 29, 1993, letter to Ms. Erickson states, "do [sic] to statutory requirements, I cannot comply with your request for data." His March 31, 1994, memorandum to BENHA explains that turning over the complaint data would have constituted a misdemeanor offense. Janklow attached copies of the relevant statutes to both notes. Whether Janklow refused an order under the requisite conditions of Minn.Stat. § 181.932, subd. 1(c), raises a genuine issue of material fact. Accordingly, summary judgment is inappropriate.

## II.

■ BENHA next argues that the common law doctrine of official immunity shields it from liability for its vote to remove Janklow.[1] BENHA contends that official immunity attaches to each individual member, and then extends vicariously to BENHA itself.

■ The doctrine of official immunity provides:

[A] public official charged by law with duties which call for the exercise of his judgment or discretion is not *personally* liable to an individual for damages unless he is guilty of a willful or malicious wrong.

*E.g., State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 569 (Minn.1994) (quoting *Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988)) (emphasis supplied). This immunity "insure[s] that the threat of potential *personal* liability does not unduly inhibit the exercise of discretion required of public officials." *McDonough v. City of Rosemount,* 503 N.W.2d 493, 497 (Minn.App.1993) (citing *Holmquist v. State,* 425 N.W.2d 230, 233 n. 1 (Minn.1988)) (emphasis supplied).

Precedent has not established whether official immunity applies to Whistleblower Act claims at all. In 1991, the supreme court declined to apply the Act retroactively and decide whether the Act implicitly waived the state's immunity in actions brought under section 181.932. *Rico v. State,* 472 N.W.2d 100, 106 n. 3 (Minn.1991). More recently, the court determined that the Human Rights Act did not waive the state's immunity. *Beaulieu,* 518 N.W.2d at 570–71. But, contrary to BENHA's position, this does not dispose of the waiver issue as it pertains to the Whistleblower Act.

A crucial difference is found in the definitions of "employer" in the two statutes. The Human Rights Act defines an employer as "a person who has one or more employees." Minn.Stat. § 363.01, subd. 16 (1994). On the other hand, the Whistleblower Act defines employer to include "the state and any political subdivisions of the state." *Id.* § 181.931, subd. 3.

The legislature made a conscious decision to identify explicitly the state and its subdivisions as appropriate defendants to whistleblower claims. The statute includes no qualifying language or suggestion that a separate standard applies to government agents. The specific language of section 181.931, subd. 3,

---

[1] The district court memorandum discussed statutory discretionary-acts immunity. *See* Minn. Stat. § 3.736. On appeal, however, BENHA does not argue for statutory immunity.

strongly implies a legislative intent to waive immunity for such claims regardless of whether the discharge involved a discretionary decision or a willfully wrong act. This implication is in direct conflict with the presumption of official immunity for discretionary decisions. We hold, therefore, that the Whistleblower Act abrogates the common law doctrine of official immunity by necessary implication.[2] *See Beaulieu,* 518 N.W.2d at 570–71 (acknowledging that official immunity may be abrogated by necessary implication).

## DECISION

The language of Minn.Stat. § 181.931, subd. 3, implicitly waives common law official immunity and renders the doctrine unavailable as a defense for BENHA in this action. Genuine issues of material fact exist concerning (1) whether Janklow qualifies as a whistleblower and, if so, (2) whether Janklow can show that a causal nexus exists between his protected whistleblowing actions and termination of his employment. Thus, the district court properly denied BENHA's motion for summary judgment.

**Affirmed.**

---

**2.** Our holding on the effect of the Whistleblower Act obviates the necessity of discussing BENHA's claim of vicarious official immunity derived from the alleged immunity of its individual members.

It is to be noted, however, that Janklow has sued the government entity but has not sued board members in their individual capacities.