Carrie J. **GEE**, Appellant,

v.

**MINNESOTA STATE COLLEGES AND UNIVERSITIES, et al.,** **Respondents.**

No. A04–1542.

Court of Appeals of Minnesota.

July 26, 2005.

Stephen H. Parsons, Marshall H. Tanick, Phillip J. Trobaugh, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, Gary R. Cunningham, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by LANSING, Presiding Judge; HALBROOKS, Judge; and MINGE, Judge.

## OPINION

LANSING, Judge.

This is an appeal from a summary judgment dismissal of claims for disability discrimination and whistleblower retaliation. Because the district court applied an incorrect standard to determine that Carrie Gee is not a disabled person for purposes of the Minnesota Human Rights Act, we reverse and remand the dismissal of Gee's disability-discrimination claim. We affirm, however, the district court's dismissal of Gee's whistleblower claim because the evidence is insufficient to establish that she made a good-faith report of a violation of federal or state law.

### FACTS

Carrie Gee was employed at the Minnesota State University, Mankato (MSU) from 1998 to 2003 as a fixed-term assistant professor in the college of education. In the spring of 2001, Gee learned that a tenure-track science-education position would become available for the 2002–2003 academic year. Gee asserts that Dr. Peg Ballard, her supervisor and friend, and Dr. Joanne Brandt, Interim Dean of the College of Education, encouraged Gee to apply for the position. Although the position required completion of a doctorate degree, all-but-dissertation (ABD) candidates were eligible for hire. In her affidavit, Gee stated that Ballard was aware of Gee's ABD status and had "convinced the Search Committee to include ABD applicants ... to ensure that [Gee] could be considered." According to Gee, Ballard also assured her that, in the event she was not hired for the tenure-track position, Ballard would extend her employment in a fixed-term position.

The science-education position's notice of vacancy, which states the qualifications for hiring, indicates that "ABD candidates will be considered; however, the doctorate

must be completed by the end of the 2002–2003 academic year." Gee contacted faculty at the Indiana University, Bloomington in October 2001 to determine whether she could complete her dissertation within the requisite time. The faculty informed her that she could timely complete the doctorate but that she needed to "retake qualifying exams." Gee forwarded this e-mail to Ballard, discussed her ability to complete the dissertation with Brandt, and applied for the position in January of 2002. Her curriculum vitae indicates that she was "ABD (all but dissertation) for the Ed.D," and she states in her affidavit that she "was first admitted to Ed.D. candidacy (ABD) . . . in April of 1988."

Concurrently with these events, Gee began experiencing medical problems. In March 2001 she was diagnosed with insulin-dependent diabetes mellitus. For the next three weeks, she was hospitalized and had seven surgeries, one of which involved the amputation of the big toe on her right foot. Gee continued to have medical difficulties throughout the 2001–2002 academic year. In August she had two additional surgeries, including a partial excision of the first metatarsal in her right foot and laser surgery on her left eye for diabetes retinopathy.

Gee walks with a quad-footed cane to maintain balance and to keep weight off her right foot, and she wears a leg brace. As a result of her condition, she cannot walk long distances, climb stairs easily, or stand for long periods. She has difficulty reading because of blurred or double vision.

In a search-committee meeting, Ballard and Dr. Karl Matz both indicated that Gee should not be considered for the tenure position because she was ABD and had little evidence of written scholarship. The committee chose to exclude her from further consideration. Ballard informed Gee on March 29, 2002, that the search committee was not considering Gee for the tenure-track position. Six days later, she also informed Gee that she would not be considered for a fixed-term position. The committee decided to extend an offer to another person, who was an ABD candidate. This person did not accept the offer, and the position remained open.

During her employment at MSU, Gee supported an effort to reactivate a student chapter of Education Minnesota (EdMN), an educators' union that had ceased activity in 1999. Beginning in August 2001, Gee worked directly on the reactivation. In her affidavit, Gee asserts that she encountered resistance from Ballard, who opposed the organization, and Matz, who was the faculty advisor to Kappa Delta Pi, the honor society for education students. In response to a request from the local field representative of EdMN, Gee contacted Carol Skorr, an administrative assistant who worked closely with Ballard, about the balance in the student organization's account. When Gee inquired about the balance, Skorr told her that the account contained only ten or twenty dollars. Gee expressed surprise because a percentage of each student member's dues had been rebated to the account for the organization's use. Gee asked what the funds had been spent on; Skorr replied that it was spent "on students."

On February 6, 2002, Gee attended a faculty meeting at which Ballard informed another faculty member that there was "plenty of money" for the student organization. Gee told the faculty members the substance of her conversation with Skorr. Gee made a second inquiry of Skorr about the expenditures. In her deposition testimony, Gee asserts that she made the second inquiry because she "was concerned about the conflicting information" and its effect on her efforts to reactivate EdMN.

Ballard confronted Gee about her inquiries and told her that the account's status was not her business and that she should not upset Skorr. Gee ultimately obtained information on the use of the funds but not until after March 29, 2002.

Gee sued in July 2003, alleging disability discrimination and retaliation for reporting the possible diversion of the EdMN funds. MSU moved for summary judgment on both claims. The district court granted the motion for summary judgment on Gee's whistleblower claim, concluding that the only statement that could be considered a report was not made for the purpose of exposing an illegality. The district court also granted summary judgment dismissing the disability-discrimination claim, concluding that Gee had established a genuine issue of material fact on whether she was qualified for the tenure-track position but not on whether she had a disability as defined by the Minnesota Human Rights Act. Gee appeals the dismissal of both claims.

### ISSUES

I. Does a physical impairment that materially affects a person's ability to walk and see constitute a disability under the Minnesota Human Rights Act?

II. Did the inquiry about the absence of money in the student-group account constitute a good-faith report of a violation of law that is protected by Minnesota's whistleblower statute?

### ANALYSIS

On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001). In as-

sessing the evidence, we view it in the light most favorable to the party against whom judgment has been granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). A summary judgment based on application of a statute to undisputed facts receives de novo review. *Wiegel v. City of St. Paul*, 639 N.W.2d 378, 381 (Minn.2002).

### I

██ The Minnesota Human Rights Act (MHRA) prohibits an employer from discharging, refusing to hire, or discriminating against a person with respect to terms or conditions of employment on the basis of a person's disability. Minn.Stat. § 363A.08, subd. 2 (2004). A plaintiff may establish a prima facie case of discrimination either by offering direct evidence of discriminatory intent or by establishing an inference of discriminatory intent under the McDonnell–Douglas shifting-burden analysis. *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 542 (Minn.2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

The district court evaluated Gee's disability-discrimination claim using the McDonnell–Douglas analysis and determined that Gee must demonstrate that (1) she was disabled within the meaning of the MHRA, (2) she applied and was qualified for the job posted by MSU, (3) despite her qualifications she was rejected, and (4) the position remained available after her rejection or was given to someone else with her qualifications. *See Hoover*, 632 N.W.2d at 542 (listing elements necessary to establish prima facie case). Only the first two elements were disputed in the motion for summary judgment. On the second element the district court determined that Gee established a genuine issue of material fact on whether she was qualified for the position. But the court granted summary

judgment based on its conclusion that Gee did not establish that she was disabled or that a genuine issue of material fact existed on the question of whether she was disabled.

■ The MHRA defines disability as "any condition or characteristic that renders a person a disabled person." Minn. Stat. § 363A.03, subd. 12 (2004). A "disabled person" is in turn defined as "any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Id.* Thus, an employee claiming disability discrimination must establish an impairment that materially limits a major life activity. Gee contends that her impairments have materially limited her major life activities of walking and seeing.

■ The MHRA does not define "major life activities." In the absence of a state law definition of this phrase, Minnesota has sought guidance in the interpretations of federal antidiscrimination statutes when the state law provisions in question are similar to provisions of the federal statutes. *See Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 623 (Minn.1988) ("As the result of the substantial similarities existing between Title VII and [the MHRA], we have frequently applied principles which have evolved in the adjudication of claims under the federal act."); *Sigurdson v. Isanti County,* 386 N.W.2d 715, 719 (Minn.1986) (applying interpretation of federal antidiscrimination law to MHRA because of similarities between statutes). Because the provisions of the MHRA and the Americans with Disabilities Act (ADA) are similar, we look to the federal definition of "major life activities" for guidance. *See Kolton v. County of Anoka,* 645 N.W.2d 403, 407–08 (Minn. 2002) (applying interpretation of ADA to MHRA).

■ Under federal law, major life activities are "those activities that are of central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 185, 122 S.Ct. 681, 684, 151 L.Ed.2d 615 (2002). The applicable federal regulation explicitly enumerates functions that qualify as major life activities, including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2003); *see also Toyota,* 534 U.S. at 195, 122 S.Ct. at 690 (observing that federal regulations include seeing and walking as examples of major life activities).

For purposes of this appeal, it is uncontested that Gee has a physical impairment, but MSU disputes that Gee's physical impairment limits a major life activity. The district court concluded that Gee was not disabled because her diabetes did not limit the major life activity of working. In reaching this conclusion, the district court disregarded Gee's assertion that she is disabled because her diabetes limits her ability to walk and see and instead required a nexus between the impairment and a limitation on her ability to work. We conclude that this is an incorrect standard because neither the plain language of the statute nor the federal definitions that guide our interpretation of the statute support this narrow reading of the MHRA.

First, the MHRA provides that an impairment can affect "one or more" major life activities. Minn.Stat. § 363A.03, subd. 12. The use of the plural implies the existence of more than one major life activity. The narrow interpretation of "major life activities" that confines the analysis to only the life activity of working would nullify both the plural and the phrase "one or more." This result is inconsistent with

the statutory language. *See* Minn.Stat. § 645.16 (2004) (providing if statute is clear we rely on its plain meaning); *Correll v. Distinctive Dental Servs.*, 607 N.W.2d 440, 445 (Minn.2000) (applying plain-meaning rule to MHRA).

Second, the federal definition and interpretation of "major life activities" include both walking and seeing. The federal regulation explicitly includes both walking and seeing as major life activities, and other jurisdictions have applied similarly inclusive definitions. *See, e.g., Brown v. BKW Drywall Supply, Inc.*, 305 F.Supp.2d 814, 825 (S.D.Ohio 2004) (stating that walking is major life activity); *Haggar Apparel Co. v. Leal*, 154 S.W.3d 98, 100 (Tex.2004) (applying definition of "major life activities" that includes walking and seeing).

In support of the narrow interpretation that limits "major life activities" to the "ability to obtain and retain employment," the district court and MSU rely on two cases: *State by Cooper v. Hennepin County*, 441 N.W.2d 106 (Minn.1989), and *Hayes v. Blue Cross Blue Shield of Minn., Inc.*, 21 F.Supp.2d 960 (D.Minn.1998). This reliance fails to take into account changes in the underlying law that affected the standards applied in both *Cooper* and *Hayes*. *See Toyota*, 534 U.S. at 200, 122 S.Ct. at 692–93 (concluding that focusing only on claimant's inability to perform tasks associated with her job is error); *Sigurdson v. Carl Bolander & Sons, Co.*, 532 N.W.2d 225, 228 (Minn.1995) (observing that Minnesota has changed its statutory language since *Cooper's* holding). *Cooper*, which limits "major life activities" to the employment context, relies on a superseded federal regulatory definition, which defines "substantially limits" as "the degree that the impairment affects employability." *Cooper*, 441 N.W.2d at 111 (quotation omitted). But federal regulation has since revised the definition of this

phrase to remove any limitation to the employment context. *See* 29 C.F.R. § 1630.2(j)(1) (2003) (defining "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity"). Thus, *Cooper* does not offer valid support to exclude walking and seeing as major life activities or to analyze only the impairment's effect on work to determine whether it constitutes a disability.

The district court's reliance on *Hayes* is similarly affected by the change in the law. *Hayes* states that the phrase "major life activities" must be considered "through the prism of the individual's employability." *Hayes*, 21 F.Supp.2d at 972. *Hayes* lacks persuasive force both because its analysis of "major life activities" relies on *Cooper* and because it also relies on the superseded federal regulation for its reasoning. *Id.* at 972–73.

Gee has introduced evidence that her diabetes and related complications cause her difficulty in walking, climbing stairs, standing for long periods, reading, and seeing. Because we conclude, as a matter of law, that walking and seeing are major life activities under the MHRA and because Gee asserts that her physical impairment limits her ability to walk and see, the district court should have examined whether Gee is materially limited in her ability to engage in these major life activities. Consequently, we reverse the district court's narrow reading of "major life activities" and remand for a determination of whether Gee is materially limited in the major life activities of walking or seeing.

■ Gee also asserts that she is disabled under the MHRA because she is regarded as having an impairment. MSU, however, contends that Gee is precluded from review of this issue on appeal because she failed both to plead the issue and to raise it in the district court. The district court explicitly noted that Gee failed to raise this issue. That failure prevented the development in the district court of a reasonable basis for review, and we conclude that the issue of whether Gee is regarded as impaired is waived on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (limiting appellate review to issues considered and decided by district court).

Finally, MSU requests that we affirm summary judgment on the alternate ground that Gee has failed to establish a genuine issue of material fact on whether she was qualified for the position. The district court concluded that Gee established a triable issue on whether the phrase "ABD candidates" in the vacancy posting referred to candidates applying for the position who have ABD status. The court noted that the departmental chair's encouragement of Gee's application supports this interpretation. MSU points to no dispositive fact or law that would provide a basis for reversing the district court on this determination.

## II

■ Minnesota law prohibits an employer from discharging or otherwise discriminating against an employee who, "in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official." Minn.Stat. § 181.932, subd. 1(a) (2004). A prima facie case of retaliatory discharge under the whistleblower statute requires the employee to demonstrate statutorily protected conduct by the employee, an adverse employment action by the employer, and a causal connection between the two. *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 444 (Minn.1983).

The statute does not define "report" or provide specific guidance in its interpretation. This court has previously applied the common meaning of the term and concluded that it means either (1) "[t]o make or present an often official, formal, or regular account of" or (2) "[t]o relate or tell about; present." *Janklow v. Minn. Bd. of Exam'rs for Nursing Home Adm'rs,* 536 N.W.2d 20, 23 (Minn.App.1995) (quoting *American Heritage Dictionary* 1531 (3d ed.1992)).

The district court concluded that Gee's conduct amounts to reporting in only one instance: her statement to the other staff that the account had less than twenty dollars in it. The record supports that determination. Although Gee twice discussed with Skorr the lack of money in the account, the conversations were inquiries and not reports. Her comments to co-workers and supervisors at the staff meeting, however, qualify as a report of the information she acquired from Skorr. The critical issue is, thus, whether this communication was a good-faith report of a violation of state or federal law or rule.

■ In determining whether a report of a violation or suspected violation of the law is made in good faith, we look beyond the content of the report and consider the employee's purpose in making the report. *Obst v. Microtron, Inc.,* 614 N.W.2d 196, 202 (Minn.2000). Thus to withstand a motion for summary judgment, Gee must show "the report [was] made for the purpose of blowing the whistle, i.e., to expose an illegality." *Id.* In considering the employee's purpose, we examine the employee's "purpose at the time

the reports were made, not after subsequent events have transpired." *Id.* An employee need not identify the specific law that the employee believes was violated, "so long as there is a federal or state law or rule adopted pursuant to law that is implicated by the employee's complaint ... and the employee alleges facts that, if proven, would constitute a violation of law or rule adopted pursuant to law." *Abraham v. County of Hennepin,* 639 N.W.2d 342, 345–55 (Minn.2002).

The district court concluded that, at the time of the report, Gee did not have a good-faith belief that a violation of law had occurred. Gee stated in her deposition that she made the inquiries to fulfill her responsibilities as a faculty advisor to the student organization, not because she suspected any illegal activity. Similarly, when she conveyed the information to her coworkers, she did so, not with the purpose of exposing an illegality, but to contradict Ballard's assertion that the organization had plenty of money. No evidence in the record indicates that Gee had any suspicion of illegal activity at the time of making the statement at the meeting, and the statement does not imply wrongdoing. Gee acknowledges in her deposition that she did not learn the reason for the budgetary discrepancy until after March 29, 2002, the date of the adverse employment action. The statement therefore does not easily fit the standard of exposing an illegality.

Even if we were to consider the statement as suggesting illegal conduct, Gee had the burden to demonstrate that the suspected misconduct implicated a violation of law. She has not satisfied this requirement. During the briefing and argument of the summary-judgment motion, Gee suggested that MSU's conduct implicated laws against embezzlement and theft. But Gee has offered no evidence to demonstrate that MSU's conduct meets the elements required to establish either offense. Neither at summary judgment nor on appeal has Gee shown that the use of the funds implicated a violation of law or rule. Gee failed to meet her burden to establish a claim for whistleblower retaliation, and we affirm the dismissal of that claim.

## DECISION

Because the evidence is insufficient to demonstrate that Gee made a good-faith report of a violation of the law, we affirm the district court's dismissal of her whistleblower claim. Because "major life activities" under the MHRA include walking and seeing and the district court imposed an incorrect standard by evaluating only the major life activity of work, we reverse the district court's dismissal of Gee's disability-discrimination claim and remand.

**Affirmed in part, reversed in part, and remanded.**