# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

Nos. 06-2459/2461

———————

| | |
|---|---|
| Carol Skare, | * |
| | * |
| Appellant/Cross-Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of Minnesota. |
| Extendicare Health Services, Inc., | * |
| | * |
| Appellee/Cross-Appellant. | * |

———————

Submitted: November 15, 2007
Filed: February 8, 2008

———————

Before MURPHY, HANSEN, and GRUENDER, Circuit Judges.

———————

MURPHY, Circuit Judge.

Carol Skare sued her former employer, Extendicare Health Services, Inc. (Extendicare), under the Minnesota whistleblower statute, alleging retaliation for her reporting violations of various laws, regulations, and company policies. The district court[1] granted Extendicare's motion for summary judgment, and Skare appeals. Extendicare filed a cross appeal to challenge the determination that a genuine dispute existed as to whether Skare suffered an adverse employment action. We affirm.

———————

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Extendicare is a health care company which operates nursing homes in several states. Each nursing home is led by an administrator with overall responsibility for the facility and a director of nursing who reports to the administrator. Nursing directors have clinical responsibilities and also work with a regional nurse consultant to ensure that the facility complies with clinical regulations. Administrators report to a regional director of operations who also works with the regional nurse consultants regarding clinical issues.

Skare worked at Extendicare from July 1997 until February 2005. She began as nursing director at a single nursing home, and in February 2000 she was appointed regional nurse consultant for eight facilities in the Minneapolis/St. Paul area. In April 2004 she was made interim nursing director of a facility in Robbinsdale, Minnesota after her predecessor was terminated.

Upon her appointment as interim nursing director at Robbinsdale, Skare complained about her work responsibilities and informed her supervisors that each facility was legally required to have a full time nursing director and a licensed administrator. She told regional director Jim Burke that she did not want to lose her license and provided him statutory citations to support her assertion that Extendicare could be denied Medicare payments if it had no licensed administrator at Robbinsdale.

In June 2004 Skare denied a prospective resident who weighed 900 pounds admission on the grounds that the Robbinsdale facility could not care for a person of his weight. While Skare was on vacation in July 2004, Extendicare approved the man's admission without her knowledge. After Skare complained to Burke about the admission, he allegedly stated that he did not care about her staffing concerns, ridiculed her, and requested hugs from her on three occasions. Skare also complained about inappropriate admissions through Extendicare's Green Flag program, which had been designed to expedite the admissions process by allowing staff members to admit

new patients automatically if they had certain enumerated diagnoses which all facilities were equipped to handle.

In July 2004 Extendicare relieved Skare of her position as regional nurse consultant and installed her as permanent nursing director at Robbinsdale with the same salary. In the late fall of 2004 Skare was advised that Robbinsdale had not obtained physician certifications and recertifications which were required before a health care facility could receive Medicare reimbursements. Skare twice raised this issue with the facility's administrator Dan Erickson. Skare also reported internally that Extendicare was discriminating in favor of Medicare patients, keeping such residents longer than medically necessary because higher reimbursements were received from Medicare than from other payor sources. On several occasions between July 2004 and January 2005, Skare expressed concerns to Erickson that Extendicare was holding beds open for Medicare patients while unlawfully denying beds to others.

In November 2004 Skare received a citation from the State Board of Nursing alleging that Robbinsdale had neglected health care during her tenure as nursing director. Despite a promise by Extendicare to provide her with an attorney and apparent efforts by its legal department to find one, Skare was not represented at a board hearing in December 2004. She suffered no discipline as a result of the citation but was upset by Extendicare's lack of support for her.

In a letter to Erickson dated January 7, 2005, Skare gave notice of her intent to resign. She stated that she had enjoyed her work at Extendicare but that she wanted to take some time off to evaluate her goals and investigate new opportunities. Prior to leaving, Skare met with one of her superiors, Area Director Sandy Goodin-Hicks, at which time Skare indicated that she viewed her reassignment from regional nurse consultant to nursing director as a demotion, complained about Jim Burke's behavior, and asserted that Dan Erickson was unable to create a positive work environment. Goodin-Hicks inquired if Skare would consider staying if Erickson left and asked her

to name the position and salary she desired. Skare indicated that she would think about the offer, but she did not pursue it. Skare resigned in February 2005. During her employment Skare had never filed any complaints with government agencies or Extendicare's compliance hotline through which employees were encouraged to report suspected violations of the law.

Skare filed this action in state court, and Extendicare removed it to federal court on diversity grounds. In her complaint Skare alleged that her reassignment, which she characterized as a demotion, was in retaliation for the numerous reports she had made to Burke and others regarding Extendicare's violations of the law. Skare also maintained that Extendicare created an unbearable work environment with the intent to force her to resign. After discovery Extendicare moved for summary judgment, alleging that Skare had failed to demonstrate a prima facie case of retaliation.

In granting summary judgment to Extendicare, the district court held that Skare had failed as a matter of law to show that her complaints constituted protected conduct under the whistleblower statute but that a genuine issue of material fact existed as to whether she had suffered an adverse employment action. The court reasoned that none of Skare's complaints were formalized in any official manner. She had failed to express her concerns to Burke in writing, document her conversations with him, or utilize the compliance hotline. The court further observed that Skare's complaints were made in the course of her ordinary job duties and not for the purpose of exposing an illegality. Moreover, Skare had failed to present evidence of a causal connection between her complaints and the alleged retaliation.

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Larson v. Kempker, 414 F.3d 936, 939 (8th Cir. 2005). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. The nonmoving party must do more than rely on allegations or denials in the

pleadings, and the elements of its prima facie case must be supported by specific facts sufficient to raise a genuine issue for trial. Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 629 (8th Cir. 2005). We may affirm the district court on any ground supported by the record. Hatchett v. Philander Smith Coll., 251 F.3d 670, 674 (8th Cir. 2001).

The Minnesota whistleblower statute prohibits retaliation against an employee who "in good faith, reports a situation in which the quality of health care services provided by a health care facility, organization, or health care provider violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm." Minn. Stat. § 181.932, subd. 1(d). To establish a prima facie case of retaliation under the Minnesota whistleblower statute, Skare was required to show that she had engaged in statutorily protected conduct, that Extendicare took an adverse employment action against her, and that a causal connection existed between the protected conduct and the adverse action. If such showing is made, the burden of production would shift to Extendicare to articulate a legitimate, non-retaliatory reason for its action, which Skare could rebut by proving it to be a pretext for unlawful retaliation. See Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). The ultimate burden remained with Skare, who was required to show by a preponderance of the evidence that Extendicare took an adverse employment action for an unlawful reason. Freeman v. Ace Tel. Ass'n, 404 F.Supp.2d 1127, 1139 (D. Minn. 2005).

Skare first argues that the district court erred in concluding that her complaints did not amount to a protected report under the whistleblower statute. Whether an employee's conduct constituted a protected report is a question of law. See Cokley, 623 N.W.2d at 630. The word "report" under the whistleblower statute "means either (1) '[t]o make or present an often official, formal, or regular account of' or (2) [t]o relate or tell about.'" Gee v. Minnesota State Colls. & Univs., 700 N.W.2d 548, 555 (Minn. Ct. App. 2005); see also Freeman, 404 F. Supp. 2d at 1139 ("Minnesota courts

use the common sense definition of 'report' to determine whether the communication at issue qualifies as a 'report' under the Act."). Relevant considerations include the complaint's content and purpose. See Hitchcock v. FedEx Ground Package Sys., Inc., 442 F.3d 1104, 1106 (8th Cir. 2006). To make a report in good faith, as required, the employee must blow the whistle for the purpose of exposing an illegality. Obst v. Microtron, Inc., 614 N.W.2d 196, 202 (Minn. 2000).

Skare asserts that contrary to the district court's reasoning, the ordinary meaning of the word report is to relate or tell about and that reports need not be official and formalized to satisfy the statute. In Janklow v. Minn. Bd. of Exam'rs for Nursing Home Adm'rs, 536 N.W.2d 20, 23 (Minn. Ct. App. 1995), the plaintiff spoke to an assistant attorney general regarding alleged violations and then wrote a memorandum to his employer about them. His action was a protected report under the whistleblower statute because it "amount[ed] to relating or presenting concerns in an essentially official manner," but we agree with Skare that she was not required to report violations in the same formalized manner as he did in order to satisfy the whistleblower statute. See Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 834-35 (8th Cir. 2007) (neither whistleblower statute nor caselaw contains express requirement that reports be made in writing and employer may not dictate sole method for communicating complaints about illegal conduct; "The contours of the formality requirement . . . remain cloudy.").

The whistleblower statute does not grant protection to an employee whose job duties require him or her to ensure legal compliance. See, e.g., Freeman, 404 F. Supp. 2d at 1139 ("A report that is presented as part of an employee's job duties is not a report under the Act."); Gee, 700 N.W.2d at 556 (inquiries were made to fulfill responsibility as faculty advisor). Skare's job duties as nursing director and regional nurse consultant required her to ensure compliance with applicable laws and to expose unlawful behavior internally. Skare did not become a statutory whistleblower by merely exercising her duties to report compliance problems at her facilities. See

Freeman, 404 F. Supp. 2d at 1141 (to rule otherwise would open door for all compliance discussions to be viewed as reports under the statute). We agree with the district court that the nature of Skare's internal complaints was to carry out her regular job duties as opposed to exposing wrongdoing.

Skare also argues that her denial of admission to a prospective resident while nursing director at Robbinsdale was a protected action under the statute, citing Minn. Stat. § 181.932, subd. 1(c) (employer may not take adverse employment action against employee who refused to follow an order which she had objective reason to believe was illegal and so informed her employer). She contends that after she was overruled on the admission decision by Burke, she told the facility's administrator that the admission was illegal. Skare did not present facts showing that she had disobeyed any employer order in refusing to admit that resident, and she did not establish a prima facie case under § 181.932, subd. 1(c). See Gundacker v. Unisys Corp., 151 F.3d 842, 847-48 (8th Cir. 1998) (same prima facie and burden shifting analysis applies for claims under subd.1(a) and subd.1(c); plaintiff failed to establish prima facie case under subd.1(c) because he did not demonstrate he refused an order from employer).

For these reasons we conclude that Skare has not shown that she engaged in statutorily protected conduct and that summary judgment was properly granted. Since Skare did not make out the first element of a prima facie case, we need not address whether her reassignment or the alleged constructive discharge and harassment amounted to adverse employment actions. Accordingly the judgment of the district court is affirmed, and the cross appeal is dismissed as moot.

_____