# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-1211

———————————————

Jennifer Marie Lenzen

*Plaintiff - Appellant*

v.

Workers Compensation Reinsurance Association

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 16, 2012
Filed: February 11, 2013

——————————

Before LOKEN, SMITH, and BENTON, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Jennifer Marie Lenzen asserted wrongful termination claims against the Workers Compensation Reinsurance Association ("WCRA"), alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (2008) ("ADA"), and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01-.43; and violation of the Minnesota

Whistleblower Act, Minn. Stat. § 181.932. Lenzen appeals the district court's[1] grant of summary judgment dismissing these claims. Reviewing the grant of summary judgment *de novo*, and viewing the summary judgment record in the light most favorable to Lenzen, the nonmoving party, we affirm. Griffith v. City of Des Moines, 387 F.3d 733, 734 (8th Cir. 2004) (standard of review).

## I.

Hired in 1995, Lenzen worked as a member of WCRA's administrative staff until terminated in December 2008. Cindy Smith became Lenzen's supervisor in 2000 and was later promoted to Vice President of Operations. Carl Cummins was WCRA's Chief Executive Officer at the times in question. Lenzen began to have medical problems in 2001, culminating in the removal of her diseased gallbladder in 2005. Lenzen was then prescribed pain medications and was treated for chronic fatigue syndrome, fibromyalgia, and chronic depression. WCRA put Lenzen on short-term and then long-term disability leave in 2005. She returned to work part-time and resumed full-time work in July 2007 after submitting a doctor's return-to-work form stating that she could work full-time as long as she could rest as needed during the day. She received no additional work restrictions from her doctors. WCRA allowed Lenzen to nap each day until the end of her employment and always allowed time off for her frequent medical appointments. But her overall attendance became an issue.

In January 2008, Lenzen received a promotion and pay raise. In March, Smith significantly reduced Lenzen's job duties because she was "not healthy enough to take the stress of the job." A memorandum explaining this demotion stated that Lenzen had missed about 30 hours more than her accrued paid time off for the year, and in prior years had taken time off in excess of her accrued time due to various health

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

reasons, creating extra work and scheduling problems for other administrative staff. Lenzen testified that the demotion was an accommodation for her medical problems and that Smith "did a good thing."

In July 2008, Lenzen emailed Smith expressing concern that WCRA's front doors were remaining open during the day, putting personal property and claims information at risk, and that student interns had access to WCRA claims files. Lenzen described these complaints as alleging violations of the Health Insurance Portability and Accountability Act ("HIPAA"). Both Smith and Cummins testified that HIPAA does not apply to workers compensation claim files, and that student interns must agree to be bound by WCRA's confidentiality rules.

In early September 2008, WCRA held an employee team-building and training conference in Owatonna, Minnesota. Other employees complained to Smith that Lenzen had dominated and frustrated a small-group session with non-stop questions and comments that others could not even understand. Lenzen testified that she simply raised the question whether WCRA had a process that employees could use if they ever thought something illegal or unethical was occurring. Following the conference, Smith and Cummins discussed Lenzen's behavior at the retreat; they testified they did not know what Lenzen had said, only that it was disruptive. Smith also complained that Lenzen had been rude to other employees and insubordinate toward Smith in the preceding months. On the following Monday, September 8, Cummins accessed Lenzen's personnel file, intending to terminate her. Lenzen came into Cummins's office and saw her file on his desk.

On September 10, Smith came to Lenzen's desk and angrily berated her for wasting WCRA time and performing unnecessary tasks. Distressed, Lenzen drafted an email to Smith complaining about the way Smith treated Lenzen and the entire support staff. Instead of sending the email, the next day Lenzen hand delivered a letter to Cummins complaining of Smith's mistreatment of the administrative staff,

and threatening to report Smith for HIPAA violations and to the Equal Employment Opportunity Commission ("EEOC"). Lenzen attached the email draft and wrote at the end of the letter: "[Smith] has already warned me that the WCRA will not tolerate another request for disability time. I feel as though [Smith] is trying to coerce me into leaving the WCRA. That is discriminatory and illegal behavior."

Cummins testified that, after reading the letter, he decided not to terminate Lenzen because that would look retaliatory. Instead, he hired an attorney from NeuVest Investigations to investigate Lenzen's claims of managerial misconduct by Smith, and staff complaints about Lenzen's behavior at the Owatonna conference and reported intolerance of her co-workers. Cummins advised Lenzen that he should not be the one to investigate her complaint and sent an email on September 17 expressing disappointment "that you might view your employment situation at the WCRA as being in some way unlawful." Cummins also told Lenzen he was investigating her behavior at the Owatonna conference and her history of poor performance, and denied her request to be assigned to a different supervisor. The NeuVest investigator interviewed Lenzen for a day, Smith for a long half-day, and seven other employees, and compiled lengthy summaries of the interviews. Some employees reported that Smith had an offensive and intimidating management style. Other employees praised Smith, confirmed the complaints about Lenzen's conduct at the Owatonna conference, and described Lenzen as an annoying or difficult co-worker. Cummins reviewed the summaries and advised Lenzen he had determined her complaints about Smith had no merit.

On November 4, 2008, Cummins issued Lenzen a final warning letter, citing continuing work performance, conduct, and attendance issues and stating she would be terminated if she did not make satisfactory progress. Cummins attached an updated job description requiring Lenzen to "key" 3.75 boxes of scanned claim files per week and informed Lenzen she must meet with Smith weekly to update Smith on her progress on the scanning project. Lenzen admitted that some weeks she failed to meet

the 3.75-box requirement. At the December 8 weekly meeting, when Smith told Lenzen she had failed to meet her weekly quota, Lenzen admits she raised her voice, accused Smith of lying, and "blew her stack." On December 23, WCRA terminated Lenzen. The termination letter stated that Lenzen had violated the terms of her final warning by failing to meet performance expectations and by being insubordinate to Smith. Lenzen commenced this action after filing administrative charges and receiving a right-to-sue letter from the EEOC.

After extensive discovery, WCRA filed a motion for summary judgment on all claims. The district court granted the motion in a lengthy Memorandum Opinion and Order. Lenzen v. WCRA, Civil No. 10-2147 (D. Minn. Dec. 30, 2011). Applying the proper summary judgment standards, the court concluded:

(1) Lenzen's claims of disability discrimination in violation of the ADA and the MHRA fail because, assuming without deciding that her medical condition is a qualifying disability, WCRA's non-discriminatory reason for the termination -- poor work performance and insubordination --"is firmly rooted in fact." The evidence does not support an inference that this rationale was a pretext for disability discrimination because WCRA "accommodated Lenzen's work restrictions for years, allowing her to take a nap every day."[2]

(2) Lenzen has no claim of ADA retaliation because she did not engage in protected conduct by complaining about disability discrimination. Lenzen alleges she was terminated because of the question asked at the Owatonna conference. But that question had nothing to do with her medical condition, and the decision to terminate was triggered in part by behavior at the conference, not the substance of her question.

---

[2]"Claims under the MHRA are analyzed the same as claims under the ADA." Somers v. City of Minneapolis, 245 F.3d 782, 788 (8th Cir. 2001). Thus, additional references to ADA claims and standards are intended to include the MHRA.

(3) Lenzen has no ADA hostile work environment claim because, even if Smith's "caustic demeanor" poisoned the work environment, Lenzen alleges Smith created a hostile environment for the entire staff, a claim that is unrelated to a medical condition protected by the ADA.

(4) Lenzen has no failure to accommodate claim because "WCRA granted every accommodation Lenzen requested." (5) Lenzen has no prima facie case of whistleblower retaliation because "[n]othing in the record . . . suggests that Cummins fired Lenzen because of her September 11" letter complaint. Moreover, the question Lenzen raised at the Owatonna conference was not a "report" for purposes of the Minnesota statute. (6) The court excluded affidavits from three former WCRA employees as irrelevant to Lenzen's claims and not based on personal knowledge.

## II.

On appeal, Lenzen challenges each of the district court's rulings. After careful review of the extensive summary judgment record, we affirm for the reasons stated by the district court in its careful, thorough opinion. Beginning with the central claims of ADA disability discrimination, we have considerable doubt that Lenzen was a qualified person with a disability within the meaning of the ADA, but like the district court we will assume she was. See 42 U.S.C. § 12102(2) (2008); Minn. Stat. § 363A.03, subd. 12. As the district court recognized, the basic flaw in Lenzen's disability claims is her failure to show a causal connection between her medical condition, her workplace environment in the months leading up to termination, and the termination. Lenzen's testimony establishes that she sincerely believed all her workplace problems -- poor attendance, inability to meet reduced job requirements, and insubordination when Smith harshly criticized her -- were directly related to her long-standing medical problems. But Lenzen's subjective belief is not evidence of intentional disability discrimination by WCRA, Smith, or Cummins.

(1) Proceeding to the distinct disability-related claims, the claim of disability discrimination fails because Lenzen concedes that she failed to meet minimum job requirements after she was issued a final warning in November 2008, and that she "blew her stack" when criticized by Smith during their December 8 weekly performance review. There is insufficient evidence (if any) that these legitimate, non-discriminatory reasons for her termination were a pretext for disability discrimination. That Lenzen referenced her medical condition in complaining to Cummins about Smith's harsh management style, or in responding to Smith's criticism of poor work performance and unsatisfactory attendance, do not -- individually or cumulatively -- create an inference of disability discrimination. WCRA had accommodated Lenzen's medical issues for years -- providing disability leave for two years, promoting her after she successfully returned to full-time work, and allowing daily naps and unlimited absences for frequent medical appointments to accommodate her medical issues. There is no evidence giving rise to an inference that, three and a half years after Lenzen first went on disability leave, WCRA terminated her because of her medical condition. Compare Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 101 (1st Cir. 2007).

(2) To establish a prima facie case of ADA retaliation, Lenzen must show that she engaged in protected activity based on a reasonable good faith belief that an agent of the employer was engaging in disability discrimination, and suffered an adverse employment action causally linked to that protected conduct. Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999); cf. Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 101 (8th Cir. 1995) ("Title VII is not a 'bad acts' statute"), cert. denied, 517 U.S. 1104 (1996). On appeal, Lenzen argues the district court erred in focusing on the question she asked at the Owatonna conference, which clearly was not ADA-protected activity. See 42 U.S.C. § 12203. Rather, Lenzen now claims, WCRA violated the ADA by terminating her in retaliation for her September 11 letter to Cummins, which was protected activity because it referred to Lenzen's medical condition in complaining about Smith's hostile management. First, this contention was not clearly

raised to the district court. Second, the reference to medical problems at the end of the September 11 letter was insufficient to convert Lenzen's complaints about Smith's management style into ADA-protected activity.

Finally, even if the September 11 letter constituted protected activity, Lenzen failed to show a causal connection between that activity and her termination over three months later. Lenzen disagreed with Cummins's response to her September 11 complaint -- commissioning an investigation of her behavior as well as her complaints against Smith, ultimately rejecting Lenzen's complaint, and refusing to assign Lenzen a different supervisor. Lenzen also considered the final warning letter in November and Smith's continued criticism of Lenzen's work performance unfair and therefore retaliatory. But disagreement with her employer's "assessment of her insubordinate behavior and poor performance . . . must do more than raise doubts about the wisdom and fairness of the supervisor's opinions and actions." Hervey v. Cnty. of Koochiching, 527 F.3d 711, 725 (8th Cir. 2008), cert. denied, 555 U.S. 1137 (2009). Lenzen's intervening unprotected conduct -- poor work performance and insubordination in November and December 2008 -- preclude any inference of a causal connection between the September 11 letter and her termination. "[T]he anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." Griffith, 387 F.3d at 738, citing Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc).

(3) In her testimony and the September 11 letter to Cummins, Lenzen asserted that Smith's hostile and intimidating management style created a hostile work environment for the entire support staff, not only for Lenzen because she was disabled. We doubt that Smith's alleged harassment and intimidating management style created a hostile work environment, one that is "severe enough to affect the terms, conditions, or privileges of [her] employment." Ryan v. Capital Contractors, Inc., 679 F.3d 772, 778 (8th Cir. 2012) (quotation omitted). But even assuming it was, Lenzen must show not only that the alleged harassment was severe and

pervasive, but also that she was *singled out* because of her disability. See Hervey, 527 F.3d at 721-22; Williams v. City of Kansas City, Mo., 223 F.3d 749, 753 (8th Cir. 2000). For example, in Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993), we reversed the grant of summary judgment dismissing a gender discrimination claim because, while the supervisor subjected all subordinates to severe physical abuse and harassment, "the incidents involving female employees [were] of a more serious nature than those involving male employees." By contrast, if Smith was a supervisor who indiscriminately berated the work performance of all her subordinates, as alleged, she may have been guilty of poor management but was not guilty of unlawful discrimination against a protected segment of that work force.

(4) Lenzen's claim that WCRA failed to provide reasonable accommodations for her disability, as required by 42 U.S.C. § 12112(b)(5)(A), fails because she never requested or otherwise adequately informed WCRA of the need for additional accommodation. See Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1217-18 (8th Cir.), cert. denied, 528 U.S. 821 (1999). Lenzen admits WCRA accommodated her by granting disability leave, reducing her job requirements in March 2008, and allowing her to take naps as needed. She testified that WCRA should have paid her during the allowed nap breaks, and failed at times to provide a private office for her naps, forcing her to sleep on the floor or at her desk. But there is no evidence she ever requested better nap space, pay for nap time, or any other accommodation of her medical condition. Nor did she present evidence that the allegedly inadequate nap accommodation negatively impacted her medical condition or job performance.

(5) As the district court explained, Lenzen's Whistleblower Act claim is without merit because there is no evidence Lenzen was terminated in December 2008 because, months earlier, she engaged in statutorily protected conduct, that is, "making a good faith report of a suspected violation of law. . . . for the purpose of blowing the whistle, i.e., to expose an illegality." Fjelsta v. Zogg Dermatology, PLC, 488 F.3d 804, 808

-9-

(8th Cir. 2007) (quotation omitted); <u>see</u> <u>Gee v. Minn. State Colls. & Univs.</u>, 700 N.W.2d 548, 555-56 (Minn. App. 2005).

(6) The contention that the district court abused its discretion by excluding affidavits by three former WCRA employees is likewise without merit, if for no other reason than, as the district court expressly stated, "nothing in the inadmissible affidavits would alter the Court's decision." Thus, any error was harmless. <u>Kerns v. Capital Graphics, Inc.</u>, 178 F.3d 1011, 1016 n.2 (8th Cir. 1999).

The judgment of the district court is affirmed.

_____